SHIFFER v BOARD OF EDUCATION OF GIBRALTAR SCHOOL
DISTRICT

OPINION OF THE COURT

1. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—REINSTATEMENT—SAL-
ARY LOST—MITIGATION—BURDEN OF PROOF.

In determining the amount of salary lost, when the Teachers'
Tenure Commission reinstates a teacher as a tenured teacher
and directs that he be paid all lost wages, there should be
deducted the amounts he earned or could have earned from
other employment; the burden on the mitigation issue is on the
school district, not the teacher.

2. DAMAGES—SALARY LOST—MITIGATION—REMEDIAL LEGISLATION.

General principles of mitigation of damages are uniformly ap-
plied in determining the amount of a back-pay award in pro-
ceedings for wrongful suspension or discharge under remedial
legislation designed to protect workers from discriminatory
practices in hiring, promotions, and firing.

3. DAMAGES—MITIGATION—AVOIDABLE CONSEQUENCES.

Mitigation of damages is the machinery by which the law seeks
to encourage the avoidance of loss, and is not solely a "breach
of contract" or "commercial" doctrine, but part of the much
broader principle of "avoidable consequences".

4. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—SUSPENSION—SALARY
LOST—MITIGATION—COMMON LAW.

The common-law doctrine of mitigation of damages does not
burden teachers with the task of "scrounging around" for other
employment while challenging an "unjust suspension"; it recog-
nizes that besides the difficulty of obtaining midyear employ-
ment, for many teachers their former employer is the only

REFERENCES FOR POINTS IN HEADNOTES
[1-6, 8-13] 68 Am Jur 2d, Schools § 208 *et seq.*
Elements and measure of damages in action by schoolteacher for
wrongful discharge. 22 ALR3d 1047.
[7] 68 Am Jur 2d, Schools § 158.
[11-13] 68 Am Jur 2d, Schools § 149.

employer in town, and it imposes no duty on teachers to accept employment outside of the teaching profession, or to accept a teaching position in another community, or at a lower status.

5. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—WRONGFUL DISCHARGE —TENURE RIGHTS.

A wrongfully discharged teacher should be reinstated and he should be compensated for the excess of the amount of his salary over whatever he actually earned or could have earned; it is not necessary to go further and award large sums unrelated to actual loss to teachers who become involved in prolonged controversy with school districts; doing so will not advance "the future of our children, the efficacy and dignity of the teaching profession and the welfare of our state."

6. SCHOOLS AND SCHOOL DISTRICTS—STATE TENURE COMMISSION—TENURE—RES JUDICATA.

A decision of the State Tenure Commission that previously acquired tenure rights of teachers were not lost when the teachers went on strike and that ordered that the tenure status of teachers once re-employed would be comparable to their status had there been continued employment with the school district in the absence of a strike, which was affirmed by a circuit court and not further appealed, is res judicata between the parties and the school district is precluded from relitigating the question whether a teacher who was a party lost his tenure rights by striking.

7. SCHOOLS AND SCHOOL DISTRICTS—TENURE—HEARING.

The burden of providing a hearing in a teacher's tenure case rests on the school district.

8. SCHOOLS AND SCHOOL DISTRICTS—STATE TENURE COMMISSION—JURISDICTION—STATUTES.

The State Tenure Commission did not exceed its statutory jurisdiction by accepting a teacher's appeal even though he was suspended almost eight months before he filed his appeal where the conduct of the school district indicated an intention to provide the teacher a hearing that he had demanded but it failed to follow through on the hearing, making it impossible for the teacher to determine precisely when the school district made the final decision to discharge him permanently without a hearing (MCLA 38.121).

9. SCHOOLS AND SCHOOL DISTRICTS—IMPROPER DISCHARGE—BACK PAY —MITIGATION—DEFERRAL.

Determination of the amount of back pay to be awarded to a

teacher whose improper discharge is reversed by the State Tenure Commission, including the question of mitigation of loss, should be deferred until the conclusion of the phase of litigation determining liability of the school board, including appeal (MCLA 38.103).

10. Schools and School Districts—State Tenure Commission—Back Pay—Mitigation—Evidence.

A case in which the improper discharge of a teacher was reversed by the State Tenure Commission is remanded to the Tenure Commission for determination of the amount of back pay with instructions (i) to deduct from the salary the teacher would have earned all wages he actually earned that he would not have earned if he were employed as a teacher, and (ii) to consider any evidence the school district offers that the teacher, through exertion of proper efforts, could have earned more.

Opinion Concurring in Part, Dissenting in Part

T. M. Kavanagh, C. J., and Swainson and Williams, JJ.

11. Schools and School Districts—Teachers—Tenure Act—Interpretation—Plain Meaning.

*The plain language of a section of the teachers' tenure act which provides that a teacher shall be entitled to all salary lost as a result of an erroneous suspension means what it says and should not be interpreted to mean all salary lost less other income earned (MCLA 38.103).*

12. Schools and School Districts—Teachers—Tenure Act—Improper Suspension—Salary Loss—Legislative Intent.

*The purpose of the Legislature in enacting the teachers' tenure act was to preserve the teacher's right to continue in his job, and a school board's knowledge that the act will eventually restore an erroneously suspended teacher to his rights and require the board to pay all salary lost as a result of the suspension acts to prevent arbitrary and contemptuous suspensions.*

13. Schools and School Districts—Teachers—Tenure Act—Salary Loss—Mitigation—Legislative Intent.

*The common-law principle of mitigation of damages was not intended by the Legislature to be introduced into the section of the teachers' tenure act which provides for recovery of salary lost as a result of an erroneous suspension (MCLA 38.103).*

Appeal from Court of Appeals, Division 2, Bronson, P. J., and R. B. Burns and Danhof, JJ., affirming Ingham, Donald L. Reisig, J. Submitted June 4, 1974. (No. 4 June Term 1974, Docket No. 54,-856.) Decided December 19, 1974.

45 Mich App 190 reversed.

George Shiffer sought review of action of the Board of Education of Gibraltar School District in terminating his services as a teacher. The State Tenure Commission ordered that plaintiff be reinstated with back pay. Defendant appealed to circuit court. Affirmed. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded to the Tenure Commission.

*Fieger, Golden & Cousens,* for plaintiff.

*Logan & Huchla,* for defendant.

LEVIN, J. The Board of Education of Gibraltar School District appeals a decision of the Teachers' Tenure Commission reinstating George Shiffer as a tenured teacher and directing that he be paid "all lost wages".

The principal question is whether in determining the amount of "salary [Shiffer] lost as a result of such suspension", there should be deducted amounts he earned or could have earned from other employment.

Justice WILLIAMS states that the statutory language, "all salary lost", is "plain and unambiguous in its terms" and that the legislative purpose in enacting the Teachers' Tenure Act was to "preserve the integrity of the teacher's tenure". He reasons from these premises that to "introduce the

common law breach of contract theory of mitigation of damages", a "commercial doctrine", into the Teachers' Tenure Act would be "alien to [and would] certainly do nothing for legislation dedicated to taking teachers out from under the thumb of arbitrary action by school boards".

This case, like many which raise issues of statutory construction, can be decided either way. What is "plain and unambiguous" often depends on one's frame of reference.

If one assumes that whenever a teacher prevails on appeal to the Tenure Commission and the courts the school board's action in suspending or discharging him was "arbitrary", then it may appear "plain" that the Legislature intended to impose a financial penalty on the school board for failing to justify its disciplinary action.

If, on the other hand, one, while recognizing that some school boards sometimes act arbitrarily, does not regard a teacher's success before the Tenure Commission and the courts as determinative of whether the school board acted in good faith in disciplining or discharging him, then what the Legislature intended—if it had any intention in this regard at all—may not appear so "plain and unambiguous".

It has been said that "[i]n many instances, expressions of the plain meaning rule may be a kind of verbal table thumping to express or reinforce confidence in an interpretation arrived at on other grounds instead of a reason for it".[1] Similarly, Professor Corbin wrote that statements about "plain and clear" meaning of a writing "assume a uniformity and certainty in the meaning of language that do not in fact exist".[2]

---

[1] 2A Sutherland, Statutory Construction (4th ed), § 46.01, p 49.

[2] 3 Corbin on Contracts, § 542, pp 109–110.

In the context of an effort to determine the amount of a back-pay award, the words "all salary lost as a result of such suspension" are not free of ambiguity.

We agree with our colleagues that it is possible to regard the words as meaning all salary wrongfully denied the teacher by the school board during the period of his suspension. The plausibility of this one reading does not, however, negate all other possible constructions and free the words of any or all ambiguity.

Equally maintainable is a construction which regards "all salary lost" as a "net loss" concept. Under this view, wages a teacher actually earns or could have earned during his period of suspension are deducted from the suspended teacher's "salary" in arriving at the net or actual amount of "salary lost".

Courts in other jurisdictions which have enacted similar legislation have considered whether the mitigation doctrine is applicable in determining the amount of a back-pay award to a wrongfully discharged teacher.

The language of these statutes is similar to Michigan's. A New Hampshire statute provides for back pay "to the extent of the full salary for the period for which such teacher was engaged". A California provision requires that a wrongfully discharged teacher be paid his "full salary for the period of his suspension". Similarly, the Pennsylvania Teachers' Tenure Act provides that in the event of reinstatement and a back-pay award "there shall be no abatement of salary or compensation". (See Part IV for statutory references.) If one is inclined to view the similar Michigan language ("all salary lost as a result of such suspension") as "plain and unambiguous in its terms",

then one would expect a uniform rejection of the mitigation doctrine by the courts of these states.

However, none of these courts have construed their statutes in the manner which our colleagues regard as the only possible construction. Each has construed its statute as meaning the teacher's "net loss" and applied general mitigation principles in determining back-pay awards. (See Part IV for citations of decisions.)

Our reference to opinions of other state courts construing similar statutory language is not, as our colleagues suggest, to imply that these opinions "accurately reflect the intention of the Michigan Legislature". These cases are cited to illustrate the fallacy of attaching the label "plain meaning" to the words "all salary lost".

It is frequently instructive to examine the reasoning and attempt to understand the practice in other jurisdictions. "Countless avenues and forms of communication and interaction among the jurisdictions lead to so much parallelism among the laws of different states as the result of emulation, adaptation, and outright copying that common patterns and standard modes of dealing with common problems become evident. Where that is the case, the phraseology and language of similar legislation in other jurisdictions is deserving of special consideration not only in the interests of uniformity, but also for the purpose of determining the general policy and objectives of a particular course of legislation."[3]

On its face and in its operation, Michigan's Teachers' Tenure Act closely resembles other remedial legislation such as the National Labor Relations Act, the Michigan Employment Rela-

---

[3] 2A Sutherland, Statutory Construction (4th ed), § 52.03, pp 337–338.

tions Act and civil rights statutes designed to protect workers from certain discriminatory practices in hiring, promotions, and firing. The usual statutory remedy for wrongful suspension or discharge is reinstatement with back pay and, in determining the amount of the back-pay award, general principles of mitigation are *uniformly* applied.[4]

The mitigation doctrine has been applied by the United States Supreme Court in construing the words "back pay",[5] by other Federal courts in administering like remedial legislation, and by state courts construing teacher tenure legislation.

The principle of mitigation is a thread permeating the entire jurisprudence. It is not solely a "breach of contract" or "commercial" doctrine; it is part of the much broader principle of "avoidable consequences".

Professor McCormick's statement of the general principle of avoidable consequences is unqualified in its application: "Where one person has committed a *tort,* breach of contract, or other *legal wrong* against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided." (Emphasis added.)[6]

---

[4] Our colleagues refer to the teachers' tenure act as the teacher's *Magna Charta.* The National Labor Relations Act has been known for over 40 years as labor's *Magna Charta.* Someone must have labeled Michigan's Employment Relations Act as Michigan employees' *Magna Charta.* Yet under those acts the mitigation principle is uniformly applied in determining the amount of "back pay".

[5] NLRA § 10(c); 29 USCA 160(c).

[6] McCormick, Damages, § 33, p 127.

That the principle of avoidable consequences applies where the injury is to persons or property or other legal wrong, as well as breach of contract, *see:* 22 Am Jur 2d, Damages, § 30 *et seq.;* 25 CJS, Damages, § 32 *et seq.*

The rights protected by the mitigation doctrine are not just those of contracting parties, commercial litigants, tort victims or tortfeasors but, rather, the rights of all society: "Legal rules and doctrines are designed not only to prevent and repair individual loss and injustice, but to protect and conserve the economic welfare and prosperity of the whole community."[7]

Mitigation of damages is, thus, the "machinery by which the law seeks to encourage the avoidance of loss".[8]

Our colleagues' exclusion of the mitigation doctrine from the administration of the Teachers' Tenure Act represents an unprecedented anomaly.

The doctrine of avoidable consequences/mitigation of damages takes into account the unique problem facing teachers in obtaining substitute employment. The common law does not "burden" them "with the task of scrounging around for other employment while challenging an unjust suspension". The common law recognizes that besides the difficulty of obtaining midyear employment, for many teachers their former employer is the only employer in town. The common law recognizes these problems and imposes no duty on teachers to accept employment outside of the teaching profession, or to accept a teaching position in another community, or at a lower status. See *Edgecomb v Traverse City School Dist,* 341 Mich 106; 67 NW2d 87 (1954).

Practically speaking, the minimal duty imposed by the common law on teachers to seek substitute employment combined with today's depressed market for teachers means that few, if any, discharged

---

[7] McCormick, *supra.*

[8] McCormick, *supra.*

teachers will be required to take undesired employment.

In most instances economic necessity will force a discharged teacher to seek alternative employment. The backlog of cases pending before the Tenure Commission and the unfortunately slow appellate process means that it will often be years before teachers who ultimately prevail are reinstated. Shiffer, for example, was reinstated four years after his suspension. The teacher in *Rumph v Wayne Community School Dist,* 31 Mich App 555; 188 NW2d 71 (1971) (held in abeyance pending decision in this case) was suspended eight years ago.

Applying the mitigation doctrine in teacher tenure controversies will not require teachers to scrounge around; rather, it will conform the economic damages awarded to the economic damages suffered.

The amounts involved are not inconsiderable. In Shiffer's case, the amount potentially involved is four years' salary; in Rumph's, eight years'.

Having in mind the pattern of like remedial legislation and the uniform construction placed on such legislation by other courts, we cannot ascribe to the Legislature a purpose of awarding such large amounts without regard to actual economic loss to teachers who, while they ultimately prevail, may not be wholly blameless in the controversy.

The wrongfully discharged teacher should be reinstated and he should be compensated for the excess of the amount of his salary over whatever he actually earned or could have earned; that is sufficient triumph and sufficient vindication of a teacher's tenure rights. It is not necessary to go further and award large sums unrelated to actual loss to teachers who become involved in prolonged

controversy with school districts; doing so will not, in our opinion, advance "the future of our children, the efficacy and dignity of the teaching profession and the welfare of our state".

# I

Shiffer and other teachers engaged in a strike against the School District when efforts to negotiate a contract failed in the fall of 1968. On December 26, the striking teachers, including Shiffer, returned to work but without a contract.

The strikers had previously received from the School District a letter dated November 27, stating, "you have terminated your employment by discontinuing your services with the school district and have also forfeited your rights to continuing tenure". This letter was predicated on Art V, § 1 of the teachers' tenure act:[9]

"No teacher on continuing tenure shall discontinue his services with any controlling board except by mutual consent, without giving a written notice to said controlling board at least 60 days before September first of the ensuing school year. Any teacher discontinuing his services in any other manner than as provided in this section shall forfeit his rights to continuing tenure previously acquired under this act."

No reference was made to the November 27 letter when the strikers returned to work in December.

Subsequently, on March 12, 1969, Shiffer was suspended for alleged acts of misconduct and insubordination and, on April 7, discharged. On March 21 and April 11, Shiffer's attorney requested in writing a public hearing.

[9] 1937 (Ex Sess) PA 4; MCLA 38.111; MSA 15.2011.

The school district's attorney claimed that he telephoned Shiffer's attorney on April 13 to set a hearing date. A school board resolution of May 12 extended to Shiffer a hearing, upon request, "public or private at his discretion". Shiffer's attorney responded with a letter of May 21 referring to his April 11 letter and requesting notification of the date of the public hearing. The school district's attorney claimed that in June he again telephoned Shiffer's attorney to set a date.

No hearing was held. In November, Shiffer filed an appeal with the Tenure Commission asserting that the board had failed to pay him during the period of suspension or to provide him with written charges and a hearing.

The board defended that Shiffer was not entitled to the statutory protections of a tenured teacher because, by striking, he had "discontinued his services". It also challenged the jurisdiction of the Tenure Commission because Shiffer had failed to appeal the board's decision within 30 days.[10]

## II

We consider first the school district's contention that a public school teacher who strikes thereby "discontinues" his services under Art V, § 1 and may be disciplined or discharged without regard to the procedural safeguards of the teachers' tenure act.

Prior to Shiffer's disciplinary discharge in March-April, 1969, Shiffer and the other striking teachers had appealed to the Tenure Commission from the School District's notice of November 27, 1968 which asserted that by striking the teachers had forfeited their rights to continuing tenure.

[10] MCLA 38.121; MSA 15.2021.

The Tenure Commission ruled for the teachers, holding that the Legislature had indicated, by legislation adopted subsequent to the teachers' tenure act, a "legislative intent to not deny previous acquired tenure rights to striking employees". It "ordered that the decision of the Gibraltar School District to take back the striking teachers in any other status than they held, be reversed: and that the tenure status of the teachers once re-employed would be comparable to their status had there been continued employment with the school district in the absence of a strike". *Chester Skubik, et al v Gibraltar School Dist,* State Tenure Commission, Docket No. 68-22, February 12, 1970.

The circuit court affirmed the Commission's decision. No further appeal was taken.

The school district's argument that a teacher who strikes thereby discontinues his services under Art V, § 1 and is not entitled to the protection of the teachers' tenure act can be addressed in a number of different ways:

(a) Factually, the school district rehired Shiffer and the other striking teachers thereby, arguably, waiving any right it may have had to treat the strike as a discontinuance of service;

(b) The decision in *Skubik* is res judicata;

(c) Art V, § 1 does not apply to discontinuance of service as a result of a strike, at least where there is no contract;[11]

---

[11] The Attorney General has ruled that "a teacher on continuing tenure and not under contract who withholds his services because of a labor dispute has not thereby discontinued his services as provided in Article V, Sec. 1 of the tenure of teachers act," reasoning that if striking school teachers were employees for the purpose of the public employment relations act *(see School Dist for the City of Holland v Holland Education Association,* 380 Mich 314; 157 NW2d 206 [1968], where a "majority of the court held that the teachers temporarily withholding their services because of a labor dispute were, nevertheless, employees of the district even though not under contract with the school district"), then "there is no valid basis to conclude that

(d) Even if Art V, § 1 applies to discontinuance of service as a result of a strike, there is no automatic forfeiture of tenure or of rights under the act, and none results unless a formal written charge is filed against the teacher which, in the event of appeal, is sustained by the Tenure Commission.

Because the Attorney General is not before us representing the Tenure Commission in an appeal from a decision of that commission, we defer to another time deciding whether Art V, § 1 applies to discontinuance of service as a result of a strike.

We hold that the decision in *Skubik* is res judicata and that the school district is precluded in this case from relitigating the question whether Shiffer lost his tenure rights by striking.[12]

### III

The school district also challenges the jurisdiction of the Tenure Commission because Shiffer failed to appeal the school board's decision within 30 days.[13]

The Tenure Commission found that the school board had offered to hold a hearing and that Shiffer had demanded one. The Tenure Commission concluded that it has jurisdiction "if it makes a finding that any delay in the appeal resulted

they are not also employees of the school district for the purposes of the tenure of teachers act, supra. It must follow that such teachers have not discontinued their services contrary to Article V, Section 1 of the tenure of teachers act". OAG 1969–1970, No. 4,704, p 150, 151–152 (June 24, 1970).

[12] *See United States v Utah Construction & Mining Co,* 384 US 394; 421–422; 86 S Ct 1545; 16 L Ed 2d 642 (1966); *Roman Cleanser Co v Murphy,* 386 Mich 698, 704; 194 NW2d 704 (1972); 2 Davis, Administrative Law Treatise, § 18.02; Davis, Administrative Law Treatise, 1970 Supp, § 18.02; 73 CJS, Public Administrative Bodies and Procedures, § 147, p 481; 2 Am Jur 2d, Administrative Law, § 497.

[13] *See* fn 10.

from the conduct of the Gibraltar school board rather than the want of due diligence by [Shiffer]". It found that the conduct of the school district, indicating an intention to provide Shiffer a hearing, but then failing to follow through on it, "made it impossible" for Shiffer to "determine precisely when" the school district made the "final decision to discharge him permanently without a hearing".

The burden of providing a hearing rests on the School District. Shiffer demanded a hearing. Only the School District could provide one.

The Tenure Commission, on the facts of this case, did not exceed its statutory jurisdiction by accepting Shiffer's appeal even though he was suspended almost eight months before he filed his appeal.

## IV

The Tenure Commission's decision ordered Shiffer "reinstated and paid all lost wages". The circuit court, in affirming the Tenure Commission's order reinstating Shiffer, held that under the tenure act "there is no duty to mitigate damages". The Court of Appeals affirmed.[14]

The School District did not reinstate Shiffer until March 12, 1973, subsequent to the Court of Appeals' decision.

Shiffer did not testify before the Tenure Commission. He did, however, in responding to a question addressed to his attorney, state that he had been employed during the period of suspension. Shiffer's attorney elaborated: "[Shiffer] has been employed. Not as a teacher. He has been employed in private industry."

---

[14] *Shiffer v Board of Education of Gibraltar School Dist,* 45 Mich App 190; 206 NW2d 250 (1973).

Article IV, § 3 of the teachers' tenure act (MCLA 38.103; MSA 15.2003) provides:

"On the filing of charges in accordance with this section, the controlling board may suspend the accused teacher from active performance of duty until a decision is rendered by the controlling board, but the teacher's salary shall continue during such suspension: *Provided,* That if the decision of the controlling board is appealed and the tenure commission reverses the decision of the controlling board, the teacher shall be entitled to all salary lost as a result of such suspension."

The School District contends that the common-law rule of mitigation of damages, applicable in instances of contract breach *(Edgecomb v Traverse City School Dist,* 341 Mich 106; 67 NW2d 87 [1954]), should be applied in determining the amount of "salary lost".

Shiffer responds that an action before the Tenure Commission is not governed by the common-law rules.

The words "all salary lost" are ambiguous. Isolating the word "salary", it is arguable that the Legislature did not intend that mitigation, actual or possible, be considered in awarding back pay. However, if the modifying word "lost" is also considered, the alternative view that it was intended that mitigation evidence be considered appears—on the face of the statute—to be equally maintainable.

The school district cites cases in which other state courts, construing similar statutory language, have applied the principle of mitigation of damages and reduced back-pay awards accordingly.

A New Hampshire statute provided that the school district was liable to a wrongfully dis-

charged teacher "to the extent of the full salary for the period for which such teacher was engaged". The New Hampshire Supreme Court held that "the words 'to the extent of' were intended to fix the 'full salary' as the outside limit of recovery, rather than to require that it measure the damages without regard to aggravation or mitigation thereof." *Spencer v Laconia School Dist,* 107 NH 125, 129; 218 A2d 437, 440 (1966).

The California Supreme Court has similarly ruled that earnings from other employment may properly be deducted in determining a back-pay award under a statute requiring that a wrongfully discharged teacher be paid his "*full salary* for the period of his suspension.'" *Mass v The Board of Education of the San Francisco Unified School Dist,* 61 Cal 2d 612, 623; 39 Cal Rptr 739, 746; 394 P2d 579, 586 (1964).

Although the Pennsylvania Teachers' Tenure Act provided that "there shall be no abatement of salary or compensation", a Pennsylvania appellate court held that earnings from other employment should be deducted from a back-pay award:

" 'Damages are the loss suffered by one person by reason of the breach of contract on the part of another and if the school teacher receives the same compensation for his work during the period of improper dismissal as he would have received if he had continued in the position from which he was improperly dismissed, he has suffered no damages except such as may arise from matters involving other elements than loss of salary.' " *Coble v Metal Twp School Dist,* 178 Pa Super 301, 305; 116 A2d 113, 115–116 (1955).

## V

Shiffer contends that these statutory constructions are not pertinent because the Michigan act,

in contrast with the statutes of these other states, was intended to be "an abrogation of the common law". He argues that the Legislature, by establishing an administrative tribunal, intended to free teacher tenure controversies from the delays associated with civil litigation and that allowing the Tenure Commission to consider mitigation evidence would frustrate the statutory purpose of expeditious administrative action.

The principle of mitigation is applied in back-pay awards by the administrative tribunals charged with the administration of the National Labor Relations Act[15] and the Michigan labor mediation act.[16] By reason of the procedures these agencies have adopted for determining back-pay awards, consideration of mitigation evidence has not been a cause of delay. These agencies defer

[15] Under the National Labor Relations Act, the Board typically issues a general order for reinstatement and back pay, *National Labor Relations Board v Corning Glass Works,* 293 F2d 784 (CA 1, 1961). Actual calculation of back pay is deferred until the general order is affirmed or ordered enforced by a United States Court of Appeals.

Ordinarily the back-pay award is resolved by negotiation between the parties, the Board overseeing this effort. In the rare cases such efforts do not resolve the matter, the Board takes proofs, finds facts and determines the amount of the award. *National Labor Relations Board v Bird Machine Co,* 174 F2d 404 (CA 1, 1949).

From the salary which the illegally discharged employee would have received there is deducted on a quarterly basis amounts which were earned or could have been earned from substitute employment. 48 Am Jur 2d, Labor and Labor Relations, § 1070 *et seq.; Republic Steel Corp v National Labor Relations Board,* 311 US 7; 61 S Ct 77; 85 L Ed 6 (1940); *Phelps Dodge Corp v National Labor Relations Board,* 313 US 177, 197; 61 S Ct 845; 85 L Ed 1271; 133 ALR 1217 (1941); *National Labor Relations Board v Seven-Up Bottling Co of Miami, Inc,* 344 US 344; 73 S Ct 287; 97 L Ed 377 (1953); *Heinrich Motors, Inc v National Labor Relations Board,* 403 F2d 145 (CA 2, 1968).

[16] In most MERC cases, once liability has been finally determined, the amount of back pay is settled by the parties without Commission assistance. Only rarely is it necessary to hold a separate compliance hearing to receive proofs and determine the amount.

MERC applies the principle of mitigation in determining back-pay awards.

determination of the amount of a back-pay award until conclusion (including appeal) of the liability phase of the controversy. Their experience is that once the liability phase is completed, the amount of back pay is resolved readily by the parties—only rarely is it necessary for the tribunal itself to take testimony and adjudicate the question.

We see no reason to treat the improper discharge of a teacher differently than improper discharge or discriminatory failure to hire[17] is treated in determining back-pay awards under other protective legislation.

The objective of an expeditious administrative resolution of tenure controversies can be accomplished by having the Tenure Commission similarly defer determination of back pay until after completion of the liability phase. There is no need to jettison the sound principles of mitigation of loss generally applied by courts and administrative tribunals throughout the land.

Deferring determination of the amount of a back-pay award will facilitate resolution of the liability phase by freeing the commission from consideration of interlocutory evidence on the back-pay issue. An effort by the Tenure Commission to determine back-pay before a definitive ruling on liability will often be premature. If the

---

[17] The duty to mitigate is explicit in the Civil Rights Act of 1964:

"The court may * * * order * * * reinstatement or hiring of employees, with or without back pay * * * . * * * Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 86 Stat 107 (1972), 42 USC 2000e-5(g).

A Circuit Court of Appeals has described the basis for mitigation in civil rights cases:

"[B]ack pay is not a penalty imposed as a sanction for moral turpitude; it is compensation for the tangible economic loss resulting from an unlawful employment practice." *Robinson v Lorillard Corp,* 444 F2d 791, 804 (CA 4, 1971), *cert dis* 404 US 1006, 1007; 92 S Ct 573; 30 L Ed 2d 655 (1971).

school district appeals from the Tenure Commission's decision and does not reinstate the discharged teacher during the pendency of the appeal, the teacher's employment status and opportunities will often change during the lengthy appeal process.

Deferral of the back-pay question will, avoiding piecemeal litigation, allow that question to be expeditiously resolved at one time with all the necessary evidence, hopefully informally and without further adjudication but, in all events, with the least expenditure of the Commission's resources.

We remand to the Tenure Commission for determination of the amount of the back-pay award in this case with instructions (i) to deduct from the "salary" Shiffer would have earned all wages he actually earned that he would not have earned if he were employed as a teacher, and (ii) to consider any evidence the school district offers that Shiffer, through exertion of proper efforts, could have earned more.

The burden on the mitigation issue is on the school district, not the teacher.[18]

Reversed and remanded to the Tenure Commission.

T. G. KAVANAGH, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with LEVIN, J.

WILLIAMS, J. *(concurring in part, dissenting in part).* The facts and issues in this case have been

---

[18] *See Edgecomb v Traverse City School Dist,* 341 Mich 106; 67 NW2d 87 (1954).

A teacher appealing a suspension or discharge may properly refuse employment *(e.g.,* a permanent employment offer) which would conflict with his effort to obtain reinstatement. *See, generally,* Anno: *Elements and Measure of Damages in Action by Schoolteacher for Wrongful Discharge,* 22 ALR3d 1047, 1057–1068.

ably set forth in the opinion of my Brother LEVIN. I fully concur in the reasoning and holdings in Parts II and III of his opinion. I respectfully disagree with his conclusion that the Legislature intended to introduce the common-law breach of contract theory of mitigation of damages into the teachers' tenure act, MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.,* the teachers' Magna Charta.[1] Mitigation of damages is a useful and honorable mechanism in its place. However, it is alien to, is not specifically mentioned in, and certainly does nothing for legislation dedicated to taking teachers out from under the thumb of arbitrary action by school boards.

There are two reasons for my conclusion. First, when the Legislature said in Art IV, § 3 of the teachers' tenure act, MCLA 38.103; MSA 15.2003 "the teacher shall be entitled to *all salary lost* as a result of such [erroneous school board] suspension", it meant what it said, "all salary lost as a result of such suspension" not "all salary lost less other income earned". Second, the Legislature's whole purpose in the teachers' tenure act was to preserve the integrity of the teacher's tenure, or *right to continue in his job.* The mitigation of damages principle does not strengthen that right but acts in derogation of it.

## I. Plain Language

When the Legislature said in Art IV, § 3 of the

---

[1] Had the plaintiff initiated his action in a court of law based upon strict breach of contract theory, mitigation of damages would not only be appropriate, it would be required. *Edgecomb v Traverse City School Dist,* 341 Mich 106; 67 NW2d 87 (1954). However, plaintiff's suit is not based upon a breach of contract theory, but is based upon a violation of rights created by the teacher tenure act, MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.*

teachers' tenure act "the teacher shall be entitled to all salary lost as a result of such [erroneous school board] suspension", it meant what it said, "all salary lost as a result of such suspension".

Except for the doubt cast by my Brother LEVIN's opinion, I would hold without question that the language of the Legislature in this section was both "plain and unambiguous in its terms, * * * [and we] have nothing to do but to obey it". *Nordman v Calhoun*, 332 Mich 460, 465; 51 NW2d 906 (1952).

The plain language of the clause "the teacher shall be entitled *to all salary lost as a result of such suspension*" is reinforced by an analysis of the meaning of the word "lost" in the phrase "salary lost". My Brother LEVIN finds that the word "lost" introduces ambiguity into the situation.

Without the word "lost" the phrase "the teacher shall be entitled to all salary * * * as a result of such suspension" is rendered meaningless. Obviously "salary [does not] result [from] such suspension". Salary results from employment not suspension from employment. Reinsertion of the word "lost" restores sense to the phrase and makes the whole clause meaningful.

The Court of Appeals accurately stated the only possible interpretation of the passage in question when it held:

" 'shall be entitled to all salary * * * ' can only refer to the salary that would be due to the teacher had the board seen fit to allow him to continue teaching. The statute does not say all damages or all salary minus such other income as was or could reasonably be earned by other employment." *Shiffer v Board of Education of Gibraltar School Dist,* 45 Mich App 190, 193–194; 206 NW2d 250 (1973).

## II. Legislative Purpose

The Legislature's whole purpose in the teachers' tenure act was to preserve the integrity of the teacher's tenure, or *right to continue in his job* and thus protect the vital instruction of teaching from arbitrary and political interference and from dismissals without just cause.

The first clause in the title of the teachers' tenure act describes the Legislature's purpose. It reads:

"An Act relative to continuing tenure of office of certified teachers in public educational institutions * * * ."

There is much history behind the teachers' tenure act. Before that act some school boards for favoritism, politics or other invalid reasons hired and fired teachers in an arbitrary and capricious manner without real regard either to the education of the pupils involved or to the teachers concerned. This was equally injurious to the future of our children, the efficacy and dignity of the teaching profession and the welfare of our state. Only by establishing the right of the teacher during competence and good behavior to continue in his job once he had proven himself worthy and well qualified could parents and the state be assured their children would receive the education necessary to achieve fulfillment and to fit them to play their full roles in our society. The teachers' tenure act assures that job right.[2] See *Rehberg v*

[2] My Brother Levin makes learned reference to labor relations and labor mediation cases. Suffice it to say that in those cases there is no question of the same kind of tenure as the teachers' tenure act guarantees teachers. Without considering whether language in the other state teachers' tenure acts are dispositively similar, it is not considered that the results reached in the referenced case in other jurisdictions accurately reflect the intentions of the Michigan Legislature.

*Board of Education of Melvindale, Ecorse Twp School Dist No. 11, Wayne County,* 330 Mich 541, 545; 48 NW2d 142 (1951).

The entitlement "to all salary lost as a result of such suspension" on successfully winning an appeal is a strong weapon to enforce the teacher's right to continue in his job. A school board that might be tempted to act arbitrarily and contemptuously in derogation of this right could well be persuaded to act otherwise knowing that the machinery of the teachers' tenure act would not only eventually restore the teacher to his rights but that the school board would have to pay that teacher "all salary lost" as a result of such arbitrary and contemptuous action. The Legislature clearly intended to make the teachers' tenure act work, and this intended provision would effectively help it to work.

On the other hand, the gratuitous judicial introduction of the common-law commercial doctrine of mitigation of damages would substitute a weak reed for a stout and just enforcement weapon.

The mandate of the teachers' tenure act and the common-law principle of mitigation of damages are repugnant to one another and cannot stand together. It would be incongruent to conclude that a statute designed to protect teachers from harassment and to preserve their integrity would at the same time require teachers to burden themselves with the task of scrounging around for other employment while challenging an unjust suspension. Yet this is the very conclusion reached by my Brother LEVIN's opinion.

## III. Conclusion

The plain meaning of the language used in the

teachers' tenure act and the legislative intent behind the passage of the act should govern; mitigation of damages should not be considered where it is neither specifically required nor intended by the Legislature. The Court of Appeals decision denying the applicability of the common-law principle of mitigation in this case should be affirmed.

T. M. Kavanagh, C. J., and Swainson, J., concurred with Williams, J.