DRYDEN v MARCELLUS COMMUNITY SCHOOLS BOARD OF
EDUCATION

Opinion by M. F. Cavanagh, J.

1. Schools and School Districts—Boards of Education—Proba-
tionary Teachers—Public Hearings—Dismissal.

The minutes of a public meeting of a board of education must
reflect a decision that a probationary teacher is unsatisfactory
before the teacher may be dismissed.

2. Schools and School Districts—Teachers' Tenure Act—Proba-
tionary Teachers—Dismissal—Statutes.

*The teachers' tenure act mandates that, in order to dismiss a
probationary teacher, at least 60 days before the close of the
school year the probationary teacher must be specifically in-
formed and notified that his work is not satisfactory and that
he will not be rehired (MCLA 38.83; MSA 15.1983).*

3. Schools and School Districts—Teachers' Tenure Act—Proba-
tionary Teachers—Termination—Reasons—Statutes.

*The teachers' tenure act requires that reasons for the dismissal of
a probationary teacher must appear in the termination notice
and the school board's discretion with respect to termination of
probationary teachers is not unfettered; a mere declaration of
"unsatisfactory" will not satisfy the statute (MCLA 38.83; MSA
15.1983).*

4. Schools and School Districts—Teachers' Tenure Act—School
Administrators—Legislative Purpose—Due Process—
Teacher Protection.

*Michigan courts have been vigilant in holding school administra-
tions to the letter of the teachers' tenure act in recognition of
due process requirements and in recognition of the legislative
purpose to protect teachers from arbitrary or vindictive admin-
istrative action.*

Reference for Points in Headnotes
[1–11] 68 Am Jur 2d, Schools § 161 *et seq.*

5. SCHOOLS AND SCHOOL DISTRICTS—PROBATIONARY TEACHERS—PUB-
    LIC MEETINGS.

    *Generally all authorized business of boards of education of a
    school district must be performed at public meetings.*

6. SCHOOLS AND SCHOOL DISTRICTS—PROBATIONARY TEACHERS—PUB-
    LIC MEETINGS—REASONS FOR TERMINATION.

    *Only a board of education may make the decision to dismiss a
    probationary teacher; and, that decision must be made public
    and it must state a rationale.*

7. SCHOOLS AND SCHOOL DISTRICTS—PROBATIONARY TEACHERS—REA-
    SONS FOR TERMINATION—PUBLIC MEETINGS—LEGISLATIVE PUR-
    POSE—DUE PROCESS—STANDARDS OF PERFORMANCE—TEACHER
    PROTECTION.

    *The public-statement-of-reasons requirement upon a board of
    education in the termination of a probationary teacher saves
    the formal board action from being a mere ceremony by provid-
    ing a standard by which the teacher, other teachers, and a
    concerned community can measure a teacher's performance
    and by which the community can measure the board's perform-
    ance, thus comporting with the legislative purpose of protecting
    probationary teachers from arbitrary or hidden grounds for
    dismissal and further ensuring the boards act with due process.*

8. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—PRIVACY—QUESTION
    FOR LEGISLATURE.

    *The practice of having a school board administrator advise a
    teacher in private conference, as opposed to a public meeting,
    concerning whether his work is satisfactory may be a wiser
    policy and protect the privacy of individuals involved in the
    proceedings, but that is a question for the Legislature rather
    than the Court of Appeals.*

9. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE ACT—SCHOOL
    BOARD ACTIONS—TEACHERS—NOTICE REQUIREMENTS—STATUTES.

    *The Legislature, in enacting the teachers' tenure act, did not
    intend public school board sessions to become rubber-stamps of
    decisions already privately made at executive session; invalid
    action cannot be rescued by later revelations, and a May 12
    correction of the minutes of a March 24 board meeting cannot
    belatedly bring the board's action into compliance with the 60-
    day teacher notice requirement of the tenure act, where May
    12 was less than 60 days before the close of the school year and
    where the 60-day requirement is strictly construed (MCLA
    38.83; MSA 15.1983).*

Opinion by M. F. Cavanagh, J.

Opinion by D. T. Anderson, J.

10. Schools and School Districts—Teachers' Tenure Act—Probationary Teachers—Dismissal—Public Meetings—Minutes.

*The minutes of a public meeting of a board of education must reflect a decision that a probationary teacher is unsatisfactory before that teacher may be dismissed; a later attempted correction of the minutes may be too late to satisfy the 60-day notice provisions of the teachers' tenure act; the minutes, however, need not contain the reasons for a decision on the unsatisfactory nature of the teacher's services.*

Dissent by Bashara, P. J.

11. Schools and School Districts—Teachers' Tenure Act—Teachers—Probation—Tenure—Public Meetings—Notice to Teachers.

*The teachers' tenure act does not require that the reasons for denying tenure or extending probation be spelled out at a public board meeting; it is sufficient if, within correct time limitations, administrative personnel carry out the board's directions with a specific written statement to the teacher involved.*

Appeal from Cass, James E. Hoff, J. Submitted June 10, 1976, at Lansing. (Docket No. 26125.) Decided December 10, 1976. Leave to appeal applied for.

Complaint by Robert Dryden against Marcellus Community Schools Board of Education and Marcellus Community Schools for mandamus to compel employment as a full-time tenured teacher. Mandamus denied. Plaintiff appeals. Reversed.

*Foster, Swift & Collins, P. C.* (by *Clifford D. Weiler),* for plaintiff.

*Thrun, Maatsch & Nordburg,* for defendants.

Before: Bashara, P. J., and M. F. Cavanagh and D. T. Anderson,* JJ.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

M. F. CAVANAGH, J. Plaintiff Robert Dryden sought a writ of mandamus in the Cass County Circuit Court to compel the defendants to offer him employment as a full-time tenured teacher for the 1975–1976 school year. After a show cause hearing, the trial court denied relief, and the plaintiff appeals. We reverse.

Plaintiff was employed as a probationary teacher by the defendants for the 1973–1974 and 1974–1975 school years. On March 24, 1975, the defendant board of education held a private executive session at which it discussed the plaintiff's employment record and his future employment status. Immediately thereafter, the board met in public session, and without further discussion of the plaintiff's competence, voted to terminate the plaintiff's employment status as of the end of the school year. The minutes of the March 24 meeting reflect the public board action:

"Moved by Varetta Powers, supported by Richard Schug, that the following teacher be released at the end of the school year. Robert Dryden. All ayes, motion carried."

On March 26, 1975, a letter notifying the plaintiff of the board's March 24 action was hand delivered to the plaintiff by the superintendent of schools. The letter detailed the reasons for the plaintiff's dismissal and bore the signature of the superintendent.

On April 14, 1975, the board formally approved the minutes of the March 24 meeting.

On April 22, 1975, the plaintiff filed his complaint for a writ of mandamus in the circuit court.

On May 12, 1975, the board adopted a resolution in an attempt to "correct errors" in the minutes of the March 24 meeting. The May 12 resolution set

forth the reasons for the plaintiff's dismissal and authorized the superintendent to send a letter notifying the plaintiff of the March 24 board action.

On June 9, 1975, the 1974–1975 school year ended.

I

The failure of the board to publicly state the reasons for terminating the plaintiff-teacher's employment violates the notice requirements of Article II, § 3 of the teachers' tenure act, MCLA 38.83; MSA 15.1983.

The teachers' tenure act provides a 60-day written notice protection for probationary teachers in MCLA 38.83; MSA 15.1983:

"Sec. 3. At least 60 days before the close of each school year the controlling board shall provide the probationary teacher with a definite written statement as to whether or not his work has been satisfactory. Failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified in writing at least 60 days before the close of the school year that his services will be discontinued."

The statute mandates that at least 60 days before the close of the school year a probationary teacher must be informed that his work is not satisfactory and that he will not be rehired. *Weckerly v Mona Shores Board of Education,* 388 Mich 731; 202 NW2d 777 (1972). The notice must be specific in indicating that the probationary teacher's services were unsatisfactory. *Munro v Elk Rapids Schools,* 385 Mich 618; 189 NW2d 224

(1971), adopting the minority opinion of Justice T. G. KAVANAGH, 383 Mich 661, 688; 178 NW2d 450 (1970). The reasons for dismissal must appear in the termination notice: the board's discretion with respect to termination of probationary teachers is not unfettered, and a mere declaration of "unsatisfactory" will not satisfy the statute. See *Lipka v Brown City Community Schools,* 59 Mich App 175; 229 NW2d 362 (1975), *lv granted,* 394 Mich 774 (1975).

Michigan courts have been vigilant in holding school administrations to the letter of this statute in recognition of due process requirements, *e.g., Ferndale Education Association v School District for the City of Ferndale #2,* 67 Mich App 645; 242 NW2d 481 (1976), and in recognition of the legislative purpose to protect teachers from arbitrary or vindictive administrative action. Justice T. G. KAVANAGH noted in *Munro v Elk Rapids Schools, supra,* that:

"We are not saying that the board lacks any discretion to retain or not to retain a probationary teacher. The probationary period is just that—a period of proof. We are saying that the intent of the *entire* act was to eliminate capricious and arbitrary employment policies of local school boards. This includes the probationary as well as the tenure period of employment." (Emphasis in original.) 383 Mich 691.

More recently, Justice WILLIAMS observed:

"There is much history behind the teachers' tenure act. Before that act some school boards for favoritism, politics or other invalid reasons hired and fired teachers in an arbitrary and capricious manner without real regard either to the education of the pupils involved or to the teachers concerned. This was equally injurious to the future of our children, the efficacy and dignity of

the teaching profession and the welfare of our state. Only by establishing the right of the teacher during competence and good behavior to continue in his job once he had proven himself worthy and well qualified could parents and the state be assured their children would receive the education necessary to achieve fulfillment and to fit them to play their full roles in our society. The teachers' tenure act assures that job right." *Shiffer v Board of Education of Gibraltar School Dist,* 393 Mich 190, 212; 224 NW2d 255 (1974), opinion of Williams, J.

In this case, the plaintiff received written notice of the pending dismissal and its rationale; his complaint is that the board failed to take its action publicly, as required by MCLA 340.561; MSA 15.3561, which provides:

"All business which the board of any district is authorized to perform shall be done at a public meeting of the board and no act shall be valid unless voted at a meeting of the board by a majority vote of the members elect of the board and a proper record made of the vote. A meeting in which all members are present, with or without proper notice, shall be considered a legal meeting for the transaction of business. Meetings of the board shall be public meetings and no person shall be excluded therefrom. *The board may hold executive sessions, but no final action shall be taken at any executive session.* The minutes of all board meetings must be signed by the secretary. In the absence of the secretary in any meeting, the president shall appoint a temporary secretary who shall sign the minutes of the meeting. In the absence of the president, the other members present shall elect a temporary president." (Emphasis added.)

It is the general rule that all authorized business of boards of education must be performed at public meetings. *Royal Oak School Dist v Schulman,* 68 Mich App 589; 243 NW2d 673 (1976). Our

task is to harmonize the tenure act with the requirement that the board take its "final action" publicly. Both parties rely on *Fucinari v Dearborn Board of Education,* 32 Mich App 108; 188 NW2d 229 (1971), as support for their respective positions.

In *Fucinari,* the personnel director and the board discussed the plaintiff-probationary teacher's employment status at an executive session. The board advised the personnel director to send the 60-day notice if the school administrators still viewed the teacher's performance as unsatisfactory. The personnel director sent the notice and the board belatedly affirmed his action by formal motion that came too late to satisfy the 60-day notice requirement. This Court, construing MCLA 340.561 and the teachers' tenure act, held that the "final action" of the board had occurred no earlier than the formal motion, despite the timely letter of notice. The *Fucinari* court declared that " * * * the statute is clear that it must be the controlling board which provides the written statement relative to the performance of a probationary teacher". 32 Mich App 108, 114.

This Court, in *Simon v Gibraltar School Dist,* 52 Mich App 643, 646; 217 NW2d 891 (1974), further explained the board's duty under *Fucinari:*

"In *Fucinari,* the Court interpreted MCLA 38.83; MSA 15.1983, according to the statute's plain meaning:
" *'[T]he controlling board shall provide* the probationary teacher with a definite written statement * * * .'
Further, MCLA 340.561; MSA 15.3561, requires all board business to be conducted at public meetings. The statute nowhere authorizes the board to either act informally or delegate its authority to the personnel director and school administrators; it contemplates a mandatory board decision."

Not only must the board make the decision, but that decision must be made public and it must state a rationale. The motion in this case cannot pass muster.

To require the board to publicly state reasons for the termination of a probationary teacher mandates not mere "indulgence in idle ceremony", but rather saves the formal board action from being a "mere ceremony". *Cf. Simon v Gibraltar School Dist, supra.* A summary board motion leaves the plaintiff, his fellow teachers, and the concerned community to wonder just what standards the board employs in termination decisions. Although the superintendent or other administrator may be expected to handle the mechanics of the written notice to the teacher, *Fucinari, supra,* without a public record there is no method to determine whether the board embraces the administrator's position. An interpretation of the tenure act to require a public statement would provide a standard by which other teachers could measure their performance and by which the community could measure the board's performance. It would comport with the legislative purpose to protect probationary teachers from arbitrary or hidden grounds for dismissal and further ensure that boards act with due process.

The defendants argue that use of executive sessions is necessary to protect the privacy of individuals involved in the proceedings. However, the Legislature has already struck the balance otherwise. In a similar case, this Court recently observed:

"The practice of having an administrator advise the teacher in private conference as to whether her work is satisfactory may be a wiser policy, but that is a question for the Legislature rather than this Court. In this

case, the trial judge has indicated he believes the defendant 'chose not to hurt the feelings of the Plaintiff'. While this may have been commendable, it was not in compliance with the statute". *Amato v Oxford Area Community School District No 7,* 70 Mich App 305, 308; 245 NW2d 728 (1976).

## II

The May 12 "correction" of the minutes of the March 24 board meeting cannot belatedly bring the board's action into compliance with the tenure act and MCLA 340.561; MSA 15.3561.

Defendants argue that if a public statement of the rationale for the plaintiff's dismissal is required, the May 12 resolution was sufficient to supply those reasons. However, the May 12 action came too late to comply with the 60-day notice requirement, which has been strictly construed. *Weckerly v Mona Shores Board of Education, supra.* Moreover, to allow this would be to allow the defendants to pull themselves up by their own bootstraps, *Fucinari, supra,* and would necessitate further collateral inquiry as to whether the May 12 resolution actually reflects the March 24 executive session. The Legislature did not intend public board sessions to become rubber-stamps of decisions already privately made. Invalid action cannot be rescued by later "revelations".

Let mandamus issue as requested. No costs, a public question.

D. T. ANDERSON, J. *(concurring).* I concur in the result reached by Judge M. F. CAVANAGH, but not in all the reasons therefor.

The minutes of the public meeting of the board of education do not reflect a decision that Dryden was an unsatisfactory teacher as required by stat-

ute and *Munro v Elk Rapids Schools,* 385 Mich 618; 189 NW2d 224 (1971). An attempted "correction" of the minutes was too late to satisfy the statute.

For reasons stated by the majority opinion in *Andersen v Adrian School District Bd of Ed,* 73 Mich App 33; 250 NW2d 786 (1976), I cannot agree it is necessary for the minutes of the board of education to contain the reasons for a decision on the unsatisfactory nature of the teacher's services.

BASHARA, P. J. *(dissenting).* I respectfully dissent. I would affirm the trial judge's denial of the writ of mandamus for the reasons stated in my opinion in *Andersen v Adrian School District Bd of Ed,* 73 Mich App 33; 250 NW2d 786 (1976).