955 F.2d 45
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PETROLIA CORPORATION, a Michigan Corporation, Wicklund
Petroleum Corporation, a Delaware corporation, and
Willard W. Wicklund, an individual,
Plaintiff-Appellants,
v.
Theodore M. ELAM, an individual, and McAfee & Taft, P.C., an
Oklahoma Professional Corporation, Defendants-Appellees.
 No. 89-1765.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1992.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges; and TODD, District Judge*
 PER CURIAM.
 
 
 1
 Plaintiffs Petrolia Corporation ("Petrolia"), Wicklund Petroleum Corporation ("WPC"), and Willard W. Wicklund (collectively "plaintiffs") appeal the district court's grant of summary judgment in favor of defendants Theodore M. Elam and the law firm of which he is a shareholder, McAfee & Taft, P.C., in this action for legal malpractice. Upon review, we reverse and remand for further proceedings.
 
 
 2
 * At all times relevant to this appeal, Petrolia and WPC were engaged in the exploration of oil and gas. Wicklund was the sole shareholder, president, and a director of Petrolia, as well as principal shareholder, a director, and chairman of the board of WPC.
 
 
 3
 Beginning in the summer of 1983 and continuing through June, 1984, Elam represented plaintiffs in a proposed merger between WPC and Petrolia. After WPC's directors unanimously approved the merger, plaintiffs authorized Elam to draft the necessary proxy statement. The proxy statement informed WPC shareholders of the proposed merger and announced that a vote on the merger would be held at WPC's annual shareholder meeting on June 15, 1984. The statement also included a provision indicating that WPC stockholders dissenting from the proposed merger had a right to appraisal of their shares. The proxy statement was mailed to WPC shareholders on May 14, 1984.
 
 
 4
 On May 24, Sumner Woodrow, a minority shareholder in WPC, filed a complaint in Delaware state court seeking to enjoin the proposed merger. The complaint alleged misstatements of appraisal rights of dissenting shareholders, the omission of certain financial information, and breaches of various fiduciary duties.
 
 
 5
 Wicklund learned of the suit sometime on May 25. In a telephone conversation later that day, Elam and investment banker Alfred DeBellas "vehemently, emphatically recommended the merger be cancelled." J.A. at 295. Elam never suggested or recommended, however, that Wicklund consider remedying the proxy statement. Id. at 318.
 
 
 6
 Further investigation revealed that the appraisal rights provision in the proxy statement may indeed have been inaccurate. Soon thereafter, Wicklund and WPC management decided to abandon the proposed merger, due in part to the $300,000 expense a resolicitation would involve, and because plaintiffs believed insufficient time remained to resolicit the proxies in time for the June 15, 1984 meeting. Soon thereafter, plaintiffs hired a different law firm to handle the Woodrow suit. That suit was settled on August 22, 1984.
 
 
 7
 In March 1985, Petrolia's creditors filed an involuntary Chapter 11 bankruptcy proceeding against Petrolia. On March 10, 1986, Petrolia filed an adversary complaint in the bankruptcy court, alleging that Elam's negligent preparation of the proxy statement led to the shareholder suit, which in turn resulted in the failure of the proposed merger and Petrolia's ensuing bankruptcy. On May 13, 1986, an amended complaint was filed adding WPC and Wicklund as plaintiffs. The matter was then referred to district court for trial.
 
 
 8
 At a hearing on Elam's motion for summary judgment, the court found that no reasonable jury could conclude that Elam's alleged negligent preparation of the proxy statement proximately caused the failure of the proposed merger. Instead, the court concluded that Wicklund's own decision to terminate the merger rather than resolicit the proxies proximately caused the merger's failure and, therefore, that any malpractice on Elam's part could not have caused plaintiffs' financial losses. Plaintiffs then filed the present appeal.
 
 II
 
 9
 Pursuant to the summary judgment standard set forth in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), a court shall render summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact.' " Id. at 247 (quoting Federal Rule of Civil Procedure 56(c)); accord Curry v. Vanguard Ins. Co., 923 F.2d 484, 485 (6th Cir.1991). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.
 
 
 10
 To establish a cause of action for legal malpractice under Michigan law, a plaintiff must show: (1) the existence of an attorney-client relationship; (2) an act or omission which is alleged to have constituted the negligence; (3) that the negligence was a proximate cause of the injury; and (4) the fact and extent of the injury alleged. Basic Foods Indust. v. Grant, 310 N.W.2d 26, 28 (Mich.App.1981), lv. den., 413 Mich. 913 (Mich.1982). Because the trial judge granted summary judgment solely on the ground that Elam's negligence did not cause the merger's failure, we limit our review to that issue as well and assume for purposes of the present appeal that plaintiffs could establish the other elements of legal malpractice.
 
 
 11
 The Michigan Supreme Court has consistently held that the issue of negligence is best resolved by the jury. As that court has explained, "[t]he preference for jury resolution of the issue of negligence ... is rooted in the belief that the jury's judgment of what is reasonable under the circumstances of a particular case is more likely than the judicial judgment to represent the community's judgment of how reasonable persons would conduct themselves." Moning v. Alfono, 254 N.W.2d 759, 763 (Mich.1977). No less than the question of negligence generally, disputes over proximate causality are uniquely within the province of the jury. In Fiser v. City of Ann Arbor, 339 N.W.2d 413 (Mich.1983), the court observed that "[t]he question of proximate cause is generally held to be one for the jury. Any doubts about the relations between the causes and the effects should be resolved by the jury. The determination of remoteness should seldom, if ever, be summarily determined." Id. at 418 (citation omitted); see also McMillan v. State Highway Comm'n, 393 N.W.2d 332, 339 n. 8 (Mich.1986).
 
 
 12
 In the instant case, the district court granted summary judgment based on its conclusion that Wicklund's decision to forego the merger constituted an independent negligent act severing the causal chain between Elam's negligent preparation of the proxy statement and the failure of the proposed merger. The district court's analysis, however, mistakes the damages flowing from the injury for the injury itself. The injury, in this case, occurred when the negligently prepared proxy statement was disseminated to WPC shareholders. At that point, any shareholder with the requisite interest in WPC could have brought suit to enjoin the merger from going forward. Although plaintiffs arguably could have remedied the proxy statement at that or some later point in time, no additional act or omission by plaintiffs could have prevented the injury itself from coming to fruition. It follows that Wicklund's subsequent decision to forego the merger did not affect the existence of the injury, but rather, at most, the extent of damages flowing from the injury. The Michigan courts have embraced the common-law tort doctrine of avoidable consequences to deal with precisely this type of situation. That doctrine requires that, where a person commits a tort against another, the latter is required to act in a manner reasonable under the circumstances to minimize damages and is limited in his recovery to those damages that could not have reasonably been avoided. Shiffer v. Board of Educ., 224 N.W.2d 255, 258 (Mich.1974). As the Michigan Supreme Court explained in Kirby v. Larson, 256 N.W.2d 400, 419 (Mich.1977), "although [the concept of avoidable consequences] takes effect after the injury has already occurred, it requires the jury to first make a judgment that plaintiff was negligent and that this negligence added to his or her damage. Then the jury ascertains the proportion to which plaintiff's fault contributed to the injury and reduces the recovery concomitantly."
 
 
 13
 As an initial matter, plaintiffs have raised a genuine issue of fact as to whether any course of action open to them could have minimized the damages flowing from Elam's alleged negligence. While conceding that resolicitation of the proxies may have been viable as a theoretical matter, plaintiffs maintain that there was insufficient time to do so prior to the annual shareholder meeting at which the proposed merger was to be voted upon. J.A. at 279. Because the parties, in their admissions to the court, dispute whether Wicklund as a practical matter could have prevented the harm flowing from Elam's negligence, Elam was not entitled to summary judgment on this issue.
 
 
 14
 Even if plaintiffs were incorrect in their contention that the proxies could not have been timely resolicited, this would not insulate Elam from all liability. First, only if Wicklund's decision to forego the merger was itself a negligent act would the avoidable consequences doctrine mitigate Elam's liability. Wicklund testified, however, that when he spoke to Elam the day after the shareholder suit was filed, Elam "vehemently, emphatically recommended the merger be cancelled," id. at 295, and that Elam never suggested that Wicklund resolicit the proxies. Id. at 318. We seriously question whether Wicklund's decision to follow Elam's advice on this matter, particularly as Elam at this point remained plaintiffs' counsel for purposes of the proposed merger, could be found to constitute negligence as a matter of law. Moreover, even if Wicklund's decision to forego the merger was negligent, plaintiffs would still be entitled to recover the amount of damages that could not have been avoided. Assuming hypothetically that plaintiffs should have remedied the proxy statement and resolicited the proxies, Elam would nevertheless be liable, at a minimum, for the expense of resolicitation, which plaintiffs estimate would have reached approximately $300,000. Finally, while some dispute remains concerning whether problems with Petrolia's oil rigs might have prevented the proposed merger from taking place regardless of Elam's negligence, it remains precisely that--a dispute, one that is eminently factual and requires resolution at trial.
 
 III
 
 15
 For the foregoing reasons, we believe that the district court improvidently granted summary judgment in favor of Elam. Accordingly, we REVERSE the grant of summary judgment and REMAND for further proceedings consistent with this opinion.
 
 
 16
 SUHRHEINRICH, Circuit Judge, dissenting.
 
 
 17
 I cannot agree with the conclusions reached by the majority. The majority states that "[t]he district court's analysis ... mistakes the damages flowing from the injury for the injury itself." In my view, however, it is the majority that is mistaken. The mere fact of a defendant's negligence does not always establish an injury for which damages are recoverable. In Michigan, the doctrine of avoidable consequences precludes recovery for any damages that a plaintiff could have avoided by reasonable effort or expenditure after the commission of the tort. Kirby v. Larson, 400 Mich. 585, 617-18, 256 N.W.2d 400 (1977). This doctrine prevents the plaintiffs from recovering here.
 
 
 18
 The majority agrees that the doctrine of avoidable consequences may apply to the present situation, but concludes that issues of fact remain as to whether the plaintiffs could have minimized the damages flowing from Elam's negligence. The majority finds a dispute as to whether there was sufficient time for the plaintiffs to resolicit the proxies prior to the annual shareholder meeting on June 15, 1984.
 
 
 19
 I read the record differently. The defendant's expert, Cyril Moscow, recited several methods by which the proxy statement could have been corrected, including deleting the appraisal rights provision or supplementing the proxy statement by letter. (J.A. at 98). The district court found that Moscow's affidavit was not refuted by the plaintiffs' evidence. (J.A. at 61). Therefore, we must assume that these options were available to the plaintiffs. Fed.R.Civ.P. 56(e). According to Moscow, the plaintiffs merely had to send a letter to the shareholders withdrawing or clarifying the appraisal rights provision in the proxy statement. This certainly could have been accomplished in the 21 days between the May 25 discovery of the error and the June 15 shareholder meeting. The plaintiffs produced no evidence to the contrary. Under Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the plaintiffs cannot create a genuine issue of material fact by mere denials.
 
 
 20
 The majority also questions whether Wicklund's decision to terminate the merger can be considered unreasonable as a matter of law. A plaintiff must use every reasonable effort within his power to minimize his damages. Socony Vacuum Oil Co. v. Marvin, 313 Mich. 528, 544, 21 N.W.2d 841 (1946). Whether or not a plaintiff's refusal to minimize damages is unreasonable "depends upon the amount of harm that may result if he does not do so, the chance that the harm will result if nothing is done, the amount of money or effort required as a preventive, his ability to provide it and the likelihood that the measures will be successful." Restatement (Second) of Torts § 918 comment e (1982). Here, the harm from terminating the merger was great and Wicklund's decision to do so ensured that the harm would result. Wicklund did not deny that he possessed the money and the ability to resolicit the proxies at a cost of $300,000 and that the merger then would have gone forward. Under these circumstances, the plaintiffs' refusal to take any steps to complete the merger was unreasonable.
 
 
 21
 Finally, the majority speculates that even if the plaintiffs were negligent, Elam may nonetheless be liable for the $300,000 it would have cost to resolicit the proxies. Had the proxies been resolicited, I would agree. But the proxies were not resolicited. A plaintiff is only entitled to recover for actual expenditures reasonably made in an effort to minimize damages. It makes no sense to hold that a plaintiff acted unreasonably in failing to minimize damages, but nonetheless allow a recovery for what it would have cost had the plaintiff acted reasonably.
 
 
 22
 In sum, the avoidable consequences doctrine was designed to apply where, as here, the consequences of a defendant's negligence could reasonably be avoided by the plaintiff. The alleged consequence of the defendant's negligence here was the failure of the merger. The undisputed evidence indicates that the plaintiffs could have completed the merger. That the defendant's negligence was a cause of the merger's failure is irrelevant because the merger's failure was the avoidable consequence. Munn v. Algee, 924 F.2d 568, 576-77 n. 16 (5th Cir.), cert. denied, 112 S.Ct. 277 (1991). Having failed to do everything reasonable to complete the merger, the plaintiffs suffered no actionable injury by the merger's failure. Because an actionable injury is an essential element of a cause of action for legal malpractice, Basic Food Indust. v. Grant, 107 Mich.App. 685, 690, 310 N.W.2d 26, 28 (1981), lv. den., 413 Mich. 913 (1982), summary judgment for the defendant was proper.
 
 
 
 *
 Honorable James D. Todd, District Judge for the Western District of Tennessee, sitting by designation