HARPER WOODS FEDERATION OF TEACHERS v HARPER
WOODS BOARD OF EDUCATION

Docket No. 47594. Submitted August 19, 1980, at Detroit.—Decided
January 26, 1981. Leave to appeal applied for.

A temporary financial crisis resulted in the layoff of several
teachers by the Harper Woods Board of Education. The teach-
ers were eventually recalled, over a period of time. The Harper
Woods Federation of Teachers brought an action against the
Board of Education and the Superintendent of Schools alleging
that the defendants breached the collective bargaining agree-
ment under which the teachers were employed by using im-
proper seniority lists in determining who would be recalled and
in what order the recalls were to take place. The Wayne
Circuit Court, Theodore R. Bohn, J., found in favor of the
plaintiff and awarded damages to several of the teachers. A
separate hearing resulted in a judgment specifying the amount
of damages due each of the teachers. The defendants appeal, as
to five of the teachers, alleging that the trial court erred in its
interpretation of the law and in finding that the five teachers
had made reasonable efforts to mitigate their losses. *Held:*

A teacher who has been wrongfully discharged is required to
make reasonable efforts to mitigate the resulting loss. He or
she is not required, however, to accept other employment
outside the teaching profession, in another community, or at a
lower status. Any wages actually earned in such other employ-
ment, which would not have been earned if he or she had been
teaching, may be subtracted from the damages awarded. The
burden of proof is on the employer. In this case the trial court
correctly determined that the defendants failed to meet their
burden of showing that the teachers failed to exercise reason-
able diligence in search of satisfactory alternate employment,
with one exception. Also, one of the five is alleged to have
received retirement benefits prior to his recall, a matter which

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Schools §§ 211, 214.
   Elements and measure of damages in action by schoolteacher for
      wrongful discharge. 22 ALR3d 1047.
[3] 5 Am Jur 2d, Appeal and Error §§ 839, 841.

was not addressed by the trial court. The case is remanded for a redetermination of damages as to those two teachers.

Affirmed in part, reversed in part and remanded.

1. Sᴄʜᴏᴏʟs — Lᴀʙᴏʀ Rᴇʟᴀᴛɪᴏɴs — Tᴇᴀᴄʜᴇʀs — Dᴀᴍᴀɢᴇs — Mɪᴛɪɢᴀ-ᴛɪᴏɴ ᴏꜰ Dᴀᴍᴀɢᴇs.

A teacher who is terminated from employment in violation of his or her contract is required to make reasonable efforts to miti-gate the damages resulting from that breach; the employer has the burden of showing a failure to mitigate adequately.

2. Sᴄʜᴏᴏʟs — Lᴀʙᴏʀ Rᴇʟᴀᴛɪᴏɴs — Tᴇᴀᴄʜᴇʀs — Dᴀᴍᴀɢᴇs — Mɪᴛɪɢᴀ-ᴛɪᴏɴ ᴏꜰ Dᴀᴍᴀɢᴇs.

A teacher who is wrongfully discharged from employment is not required to accept employment outside the teaching profession, in another community, or at a lower status in order to mitigate his or her losses; however, any wages actually earned in such employment which would not have been earned if the teacher were still teaching is properly subtracted from any damages awarded as a result of the wrongful discharge.

3. Aᴘᴘᴇᴀʟ — Cʟᴇᴀʀ Eʀʀᴏʀ.

A trial court's findings will not be disturbed on appeal unless clearly erroneous; that is, where, although there is evidence to support the findings, the reviewing court is left with the definite and firm conviction that a mistake has been committed.

*Fieger, Cousens & Boesky, P.C.,* for plaintiff.

*Miller, Canfield, Paddock & Stone* (by *James E. Tobin* and *Richard J. Seryak),* for defendants.

Before: J. H. Gɪʟʟɪs, P.J., and N. J. Kᴀᴜꜰᴍᴀɴ and R. M. Mᴀʜᴇʀ, JJ.

Pᴇʀ Cᴜʀɪᴀᴍ. Defendants appeal by right the judgment of the trial court awarding damages to five members of plaintiff labor organization.

This appeal involves five teachers[1] who, along

[1] The five teachers are Thomas Stevens, Joseph Chester, Eugene Rieckhoff, Cheryl Bagi, and Rita Glassgold. A sixth teacher, Madonna LaVerge, was involved in the most recent proceedings in the trial court, but the award made to her is not challenged on appeal. In addition, while defendants make extensive references to Eugene

with other teachers employed by defendant board of education, were notified that they were to be laid off effective July 1, 1972. The layoffs were the result of a temporary fiscal crisis brought about by an adverse tax ruling which deprived the school district of substantial revenues. As the financial picture cleared, teachers were recalled for the 1972-1973 school year. The five teachers involved in this appeal were not, however, immediately recalled. Plaintiff brought suit alleging that defendants breached the collective bargaining agreement by using improper seniority lists in determining who would be recalled and in what order those recalls were to take place. The trial court found in favor of plaintiff and by judgment entered June 11, 1975, awarded certain teachers, including the five involved in this appeal, monetary damages consisting of lost wages and fringe benefits. By way of an amended judgment dated September 25, 1975, the trial court permitted defendants to adduce additional testimony and evidence solely on the issue of whether certain teachers had complied with the duty to mitigate their damages. Before a hearing for this purpose was conducted, defendants appealed to this Court, which affirmed the trial court's judgment in a memorandum opinion on March 28, 1977. Defendants then sought leave to appeal to the Supreme Court, which denied leave on December 15, 1977.[2]

The hearing on the mitigation issue was scheduled for November 18, 1978.[3] On that date, the

Rieckhoff on appeal, they expressly state that they do not challenge the award made to him.

[2] *Harper Woods Federation of Teachers v Harper Woods Board of Education,* 402 Mich 825 (1977).

[3] By this date, all five teachers had been formally recalled. Cheryl Bagi was recalled in January of 1973, and Rita Glassgold in September of that same year. The remaining three were recalled on April 10, 1978, after the resolution of the first appeals.

parties appeared and agreed that in lieu of an evidentiary hearing proofs would be submitted by way of depositions, interrogatories, and affidavits. By opinion dated May 21, 1979, the trial court found that all of the teachers had used every reasonable effort within their power to minimize their damages. Accordingly, while the damages were reduced by those amounts that the teachers actually earned which they would not have earned if employed as teachers, the damages were not further reduced. A judgment specifying the amount of money due each teacher was entered on September 21, 1979.[4]

This appeal involves only the mitigation issue. All questions concerning liability have been resolved and the only questions that remain concern the amount of the damages awarded. Defendants' principal contentions on appeal are that the trial court erred in its interpretation of the applicable law and in finding that the teachers had made reasonable efforts to mitigate their damages. We will proceed first to analyze the applicable law, then examine whether the trial court's findings were clearly erroneous.

It has long been held that the doctrine of avoidable consequences requires a teacher who is terminated in violation of his or her contract to make reasonable efforts to mitigate the damages resulting from that breach, and that the burden of showing a failure to adequately mitigate rests with the employer. *Edgecomb v Traverse City School Dist,* 341 Mich 106; 67 NW2d 87 (1954), *Farrell v*

---

[4] The amounts awarded were as follows:

| | |
|---|---|
| Thomas Stevens: | $128,796.95 |
| Joseph Chester: | $108,883.30 |
| Eugene Rieckhoff: | $ 15,373.25 |
| Cheryl Bagi: | $ 7,635.65 |
| Rita Glassgold: | $ 19,003.63 |

*Rubicon Twp School-Dist No 2,* 98 Mich 43, 46-47; 56 NW 1053 (1893).[5] The question of what efforts are necessary in order for the teacher to discharge this duty has also been discussed:

"The law does not require that the plaintiff should have sought or accepted service of a different grade or character from that in which she was employed." *Farrell, supra,* 47.

" 'The rules applicable to ordinary contracts of employment so far as the measure of damages is concerned obtain in cases of breach of contract to teach school. *Park v Independent School Dist of Pleasant Grove,* 65 Iowa 209 (21 NW 567) [1884]. And when such contract is disregarded by the school district and the teacher is denied the right to perform, it is her duty to find other employment, and, when sued, the school district may show that she has found other employment, or that by the use of reasonable diligence she might have found other employment for the purpose of mitigating the damages; *but, if the discharged teacher did not accept other employment, her damages should not be diminished for failure to secure it, unless it be shown that by reasonable diligence she might have secured employment of the same grade in the same locality where she was employed to teach. She was not required to accept employment in another locality or of a different or lower grade.* The law is very clear on this proposition.' " *Edgecomb, supra,* 116, quoting *Byrne v Independent School Dist of Struble,* 139 Iowa 618, 620-621; 117 NW 983 (1908). (Emphasis added.)

---

[5] "A plaintiff may rest his case upon proof of a contract of service, its breach, and damages, which are determined by the contract price of the services. The defense that he was engaged in other profitable employment, or might have had other similar employment, is an affirmative one, and the burden of proof is upon the defendant. * * * If an employer sees fit to discharge his employe without legal excuse, it is equally within his power to seek, and, if he find, to offer, other similar employment to such employe, or to furnish evidence to the jury that such employment might, with reasonable effort, have been obtained. When he has been guilty of the wrong, the law casts the burden upon him to show that the employe has not, or need not have, suffered damages." *Farrell, supra,* 47.

These principles were reaffirmed in *Shiffer v Board of Education of Gibraltar School Dist,* 393 Mich 190; 224 NW2d 255 (1974), where the Court held that the common law rule of mitigation, which was applicable in cases where teachers were seeking damages for wrongful discharge under a contract, was also applicable where teachers were seeking damages for a discharge held wrongful under the teachers' tenure act.[6] In the trial court and on appeal, defendants in the instant case have contended that the Court in *Shiffer* implicitly adopted such mitigation related rules as the "lower sights doctrine"[7] and the "most successful employee doctrine".[8] Accordingly, they argue that the trial court erred in refusing to apply these doctrines in determining whether the teachers' mitigation efforts were sufficient.

The "lower sights" and "most successful employee" doctrines were developed in the context of employment cases arising under civil rights statutes and Federal labor laws. These doctrines are not specifically mentioned in *Shiffer,* but defendants argue that since the Court made reference to the fact that mitigation is required under the laws that gave rise to such doctrines, the Court

---

[6] MCL 38.71 *et seq.;* MSA 15.1971 *et seq.*

[7] Under the "lower sights doctrine" a wrongfully discharged employee who, after a reasonable period of time, is unable to locate work of the kind to which he or she is accustomed is required to "lower his or her sights" and consider accepting other available employment even if the pay rate is lower. See *NLRB v Madison Courier, Inc,* 164 US App DC 284; 505 F2d 391 (1974), *NLRB v Southern Silk Mills, Inc,* 242 F2d 697 (CA 6, 1957), *cert den* 355 US 821; 78 S Ct 28; 2 L Ed 2d 37 (1957).

[8] Under the "most successful employee doctrine", when two or more persons are wrongfully discharged by the same employer, mitigation efforts are judged according to the efforts of the employee who is most successful at obtaining alternative employment. See *Jurinko v Edwin L Wiegand Co,* 331 F Supp 1184, 1188 (WD Pa, 1971), *aff'd as modified* 477 F2d 1038, 1046-1047 (CA 3, 1973), *vacated and remanded on other grounds* 414 US 970; 94 S Ct 293; 38 L Ed 2d 214 (1973).

intended that the doctrines apply in Michigan as well. An examination of the context in which the Court in *Shiffer* discussed the mitigation requirements in civil rights and Federal labor law cases convinces us that there was no intent, implicit or otherwise, to adopt the entire scheme of mitigation rules used in such cases. The Court in *Shiffer* referred to these statutes in two contexts. In the first, reference was made to them in order to refute the position, expressed in a dissenting opinion, that the Legislature had not intended the mitigation rule to apply to cases under the teachers' tenure act. By demonstrating that mitigation was uniformly required under other similar remedial statutes designed to protect workers from discriminatory treatment, the Court intended only to show that the concept of mitigation was far from alien to statutes such as the teachers' tenure act. *Shiffer, supra,* 196-197. In the second context, the Court was seeking to refute the claim that the Legislature did not intend mitigation to apply to teacher tenure cases because of the delay that would result. The Court was of the opinion that application of the mitigation principle need not slow the expeditious administration of the act and noted that under Federal and Michigan labor law the determination of the amount of damages was deferred until the question of liability was finally resolved. The Court suggested that adoption of a similar procedure in Michigan would avoid the problem of delay. *Shiffer, supra,* 207-209. In both contexts, the Court was seeking only to refute specifically mentioned concerns. In neither context did the Court express the intent to adopt other specific rules related to the mitigation principle.

In applying the common law rule of mitigation to teacher tenure cases, the Court in *Shiffer* did

expressly relate what sort of efforts were required to comply with the rule:

"The doctrine of avoidable consequences/mitigation of damages takes into account the unique problem facing teachers in obtaining substitute employment. The common law does not 'burden' them 'with the task of scrounging around for other employment while challenging an unjust suspension'. The common law recognizes that besides the difficulty of obtaining midyear employment, for many teachers their former employer is the only employer in town. The common law recognizes these problems and imposes no duty on teachers to accept employment outside of the teaching profession, or to accept a teaching position in another community, or at a lower status. See *Edgecomb v Traverse City School Dist,* 341 Mich 106; 67 NW2d 87 (1954).

"Practically speaking, the minimal duty imposed by the common law on teachers to seek substitute employment combined with today's depressed market for teachers means that few, if any, discharged teachers will be required to take undesired employment." *Shiffer, supra,* 198-199.

Summarizing the rule of mitigation as applied to teachers by our Supreme Court, the teachers in the instant case had a duty to minimize their losses by the use of reasonable diligence in the effort to locate other employment. Nevertheless, the teachers were not required to mitigate by accepting employment outside of teaching, in another community, or at a lower status. While not required to accept such employment, any wages actually earned by the teachers in such employment which would not have been earned if they were still teaching is properly subtracted from the damages awarded. The employer bears the burden of showing what the teachers actually earned, and of showing that through the use of reasonable

diligence acceptable employment could have been found.

In the instant case, testimony was presented via depositions concerning the mitigation efforts of each of the teachers and concerning the availability of teaching jobs in the Detroit metropolitan area. Review of this testimony convinces us that the trial court was correct in determining that the defendants did not meet their burden of showing that the teachers failed to exercise reasonable diligence in search of satisfactory alternative employment. The record reveals that each of the teachers involved in the instant case made efforts to obtain new teaching jobs. These efforts included phone contacts, interviews, school visits, mail contacts, and the submission of applications. Each teacher contacted several school districts, often on more than one occasion over the period of layoff. These efforts may not, however, be judged in a vacuum, and depositions were also taken from several school administrators representing districts in the area surrounding the Harper Woods district. This testimony revealed that during the period in which the teachers in the instant case were laid off there were some openings for regular, full-time teachers. There were always more applications than positions, however, and even if hired the teacher would only receive partial salary credit for prior experience, if any credit was received at all. Opportunities for substitute teaching were available almost everywhere, but the testimony reveals that these jobs were of a "lower status" when compared with a regular, full-time teaching job. Substitutes were in general paid at a much lower rate than regular teachers and the available substitute positions seldom offered more than day-to-day or "on-call" employment. In addi-

tion, most substitutes were faced with a new and unfamiliar class every day. The best substitute opportunities available appear to have been offered by the Detroit Public Schools in a position known as Emergency Substitute in Regular Position (ESRP). ESRP's were salaried and hired on a full-time basis, but earned substantially less by virtue of the fact that full salary credit was not given for prior experience or advanced degrees. While an ESRP stood a good chance of becoming a regular contract teacher after serving 100 days as an ESRP, there was no guarantee that an ESRP would eventually be hired as a regular teacher. Accordingly, even this position was one with a "lower status" than that of a regular teacher, and the teachers in the instant case were not required to accept it in order to comply with their duty to mitigate.

The trial court in the instant case balanced the efforts made by the teachers with the possibilities that existed and found that the efforts made sufficiently discharged the duty to mitigate. A trial court's findings will not be disturbed on appeal unless clearly erroneous. *Smith v Michigan State Accident Fund,* 403 Mich 201; 267 NW2d 909 (1978). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Smith, supra,* 204, *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). After reviewing the record in the instant case as it pertains to each of the teachers involved, we are left with the definite and firm conviction that an error was made in only one instance. The record indicates that Rita Glassgold made no efforts whatsoever to locate employment from the time of her layoff in

1972 until early 1973. This is in contrast to all of the other teachers, who began immediately to contact various school districts and who continued to make some effort throughout the entire period they were laid off. While the record reflects that there was a scarcity of acceptable teaching positions during this time, there were positions available so that some effort was reasonably required. Accordingly, Glassgold's case is remanded to the trial court for a redetermination of damages. Her damages should be reduced so as to reflect her failure to use reasonable diligence in seeking alternative employment during the first semester of her layoff. In all other respects we do not find the trial court's findings to be clearly erroneous. Defendants allege on appeal, however, that Joseph Chester applied for and received retirement benefits from the Michigan Public School Employees' Retirement System prior to his recall. This matter was not addressed by the trial court. Accordingly, we remand Chester's case to the trial court for a determination of what effect, if any, receipt of such benefits should have on the amount of damages awarded Chester.

We have reviewed the defendants' arguments concerning the effect of this Court's opinion in *Chester v Harper Woods School Dist,* 87 Mich App 235; 273 NW2d 916 (1978), *lv den* 406 Mich 942 (1979), on the period of time for which Chester and Stevens could be awarded back pay, and find them without merit.

Affirmed in part, reversed in part and remanded. We do not retain jurisdiction.