SENTRY INSURANCE A MUTUAL COMPANY v LARDNER
ELEVATOR COMPANY

Docket No. 78667. Submitted August 8, 1985, at Lansing. Decided
May 9, 1986.

Division Products, Inc., entered into a contract with Ingham
County for the renovation of the Ingham County Shelter Home
and secured a performance bond with Sentry Insurance A
Mutual Company. Division subcontracted the installation of an
elevator in the home to Lardner Elevator Company. Division
abandoned the renovation project after encountering serious
financial difficulties. Pursuant to the performance bond, Sentry
hired Omega Construction Company to complete the project.
Lardner expressed concern over receiving proper payment after
Division terminated its involvement. A resolution was then
drawn between Sentry, Lardner, and Ingham County, which
provided Lardner with an immediate payment. However, com-
pletion of the elevator installation did not proceed as scheduled
or as smoothly as was anticipated by the parties. Eventually,
Sentry had to hire Otis Elevator Company to complete the
installation and thereafter filed an action in the Ingham Cir-
cuit Court against Lardner, alleging breach of contract and
seeking damages for the alleged breach. After a bench trial, the
circuit court, Michael G. Harrison, J., entered a judgment in
favor of Sentry, awarding money damages and a portion of
Sentry's attorney fees. Lardner appealed and Sentry cross-ap-
pealed regarding the award of attorney fees. *Held:*

1. The circuit court did not err in finding that Lardner had
breached its subcontract with Division by failing to perform as
agreed and that Sentry, being subrogated to all of Division's
rights and remedies under the subcontract, was entitled to
damages as awarded.

2. The provision of the subcontract included a stipulation by

REFERENCES

Am Jur 2d, Appeal and Error § 545 *et seq.*
Am Jur 2d, Attorneys at Law § 264.
Am Jur 2d, Subrogation §§ 53 *et seq.*
See the annotations in the ALR3d/4th Quick Index under Appeal
and Error; Attorneys' Fees; Principal and Surety.

which Lardner agreed to pay Division reasonable attorney fees in the event it became necessary to enforce the subcontract. The circuit court therefore erred in considering whether or not Lardner was responsible for all of the delay in the installation of the elevator in awarding Sentry, the subrogee to Division's rights under the subcontract, only a portion of the attorney fees it requested. On remand, the circuit court must determine the fair value of legal services rendered to and on behalf of Sentry, and award that amount as attorney fees.

Affirmed and remanded.

1. APPEAL — FINDINGS OF FACT — BENCH TRIAL.

A finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed (MCR 2.613[C]).

2. SUBROGATION — SURETIES — PERFORMANCE BONDS.

A surety who completes the contract of a defaulting contractor, pursuant to the terms of a performance bond, may be subrogated to all rights and remedies of the defaulting contractor against a third party, who by a subcontract was obligated but failed to perform some part of the work which the surety was required to complete.

3. CONTRACTS — ATTORNEY FEES.

Attorney fees may be awarded in an action based on contract where the parties have contractually stipulated for reasonable attorney fees; the award must be measured by the fair value of the services rendered.

*Tolley, Fisher & Verwys, P.C.* (by *Thomas F. Koernke* and *Sharon R. Brinks*), for plaintiff.

*William J. Monaghan,* for defendant.

Before: HOOD, P.J., and D. E. HOLBROOK, JR., and D. P. KERWIN,* JJ.

PER CURIAM. Plaintiff, Sentry Insurance A Mutual Company, the surety on a performance bond for Division Products, Inc., sued defendant, Lard-

_____

* Recorder's court judge, sitting on the Court of Appeals by assignment.

ner Elevator Company, in circuit court for breach of a subcontract between Lardner and Division. Following a bench trial, the circuit court found Lardner in breach and entered judgment in favor of Sentry for $54,933.84. Part of the award represented reimbursement for a portion of Sentry's attorney fees and costs. Both parties appeal as of right. We affirm the judgment, but remand to the lower court for further proceedings with respect to attorney fees.

I

Division contracted with Ingham County in February, 1981, to renovate the Ingham County Shelter Home. Division secured a performance bond from Sentry. In March, 1981, Division subcontracted with Lardner to install the elevator. Lardner was to be paid $40,485 for the job. Additionally, all the obligations on the primary Division-Ingham County contract were incorporated in the Division-Lardner subcontract. The elevator was to be completed by November, 1981.

Division abandoned the project in October, 1981, after running into serious financial difficulties. Under the performance bond, Sentry hired Omega Construction Company to complete the project for Division. Because of Lardner's concern that it might not receive proper payment under the subcontract, a resolution was drawn between Sentry, Lardner, and Ingham County in which Lardner was to be paid $20,000 up front and was to proceed posthaste to complete construction of the project. Under the resolution, the balance of the funds owing to Lardner was to be placed in escrow.

Lardner accepted the $20,000, but performed sporadically. There was a great deal of testimony at trial about Lardner's difficulties with the eleva-

tor project, and how those difficulties impaired progress on construction of the shelter home. Moreover, the parties had misunderstandings about payments due Lardner.

There was evidence that Lardner did not work at all on the project between October 7 and October 26, 1981, but that this was unrelated to Division's default. Lardner also failed to do any work during deer-hunting season, during Thanksgiving or the week immediately thereafter. Further, Lardner removed equipment from the construction site for storage.

Technical problems arose in October, 1981, involving alteration of the size of the elevator's cab and platform. Initially, Lardner contended that Division was to pay for altering the elevator platform and Lardner would pay for altering the cab. Division was to pay $300 to $500. Sentry stood behind Division's agreement after Division defaulted. Later, Lardner insisted that Sentry should pay the entire cost of both the cab and platform alterations, and issued an invoice for $1,350 for the alterations on November 19, 1981. Sentry indicated it had never agreed to pay Lardner in advance for installation of the elevator. Moreover, Sentry posited that little work was done on the elevator after it paid Lardner the $20,000 pursuant to the resolution.

When Omega took over for Division in mid-October, 1981, Charles DeYoung, vice-president in charge of construction, arrived at the site and noted that the elevator was the most incomplete item. This delayed other aspects of the construction, and Lardner was only working sporadically. DeYoung contacted Bruce Lardner, who told DeYoung he did not trust Sentry and hung up the phone. Two hours later DeYoung tried again and Bruce Lardner hung up again. Little work on the

elevator was done after Lardner received the $20,-000. Lack of progress on the shelter home project was attributable to Lardner's slow progress on the elevator, according to DeYoung.

Under the subcontract between Division and Lardner, certification and approval of the project architect was a condition of payment. Ingham County's architect on the project, James Gray, indicated that he approved paying Lardner $20,-000 because he believed all the materials were at the construction site. He did not approve Lardner's subsequent invoices for $5,000 and $7,000 because he had inadequate proof that Lardner was entitled to those funds. Gray was dissatisfied with Lardner's performance on the elevator as early as November, 1981. After November, 1981, the elevator was the only major incomplete item on the project.

Lardner contended that other difficulties had hampered its performance. While the elevator was initially to be completed by September, 1981, a state permit to install the elevator was not issued until September 23, 1981. Lardner immediately began installation, and issued an invoice for $27,-000 to cover materials and labor. Lardner was informed it would receive only $20,000, with the remaining $7,000 subject to approval. Lardner never received the remaining $7,000. When the problem of the elevator's size arose in October, 1981, Lardner told Division to pay for altering the platform. Lardner was to modify the cab. Initially, Lardner believed the modification would cost nothing because the cab had not yet been constructed. Subsequently, Lardner learned that the canopy had been completed, and issued an invoice to Sentry for the total overage of $1,350. Lardner also indicated it was dissatisfied with a penalty clause in the contract. Lardner could not proceed

as of November 15, 1981, until the general contractor had completed some work. Lardner did not contact Omega because Lardner and Omega had had problems in the past regarding another construction project. Lardner indicated it remained ready, willing, and able to install the elevator in mid-November, 1981.

In January, 1982, Sentry hired Otis Elevator Company to complete the elevator installation at a cost of $40,000.

In the lower court's judgment for Sentry for $54,933.84, $21,515 represented damages for the cost of replacement, $5,926.88 represented damages for delay, and $15,521.29 represented reimbursement for a portion of Sentry's attorney fees.

II

First, we consider whether the trial court properly found that Lardner breached its subcontract and had to answer in damages. We hold that it did.

We review the trial court's findings of fact and conclusions of law by determining whether they were clearly erroneous. MCR 2.613(C); *Harper Woods Federation of Teachers v Harper Woods Bd of Ed,* 103 Mich App 649, 658; 302 NW2d 857 (1981); *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). A finding is clearly erroneous where we are left with a definite and firm conviction that a mistake has been made. *Tuttle, supra,* p 46.

The basic issue before the trial court was: who breached the contract first—Sentry by not paying Lardner's periodic invoices or Lardner by not performing under the contract?

Here, Sentry was responsible for Division's contract because of the performance bond, and was

subrogated to all of Division's rights and remedies under the subcontract. Had Division breached the subcontract with Lardner, Lardner could assert that breach against Sentry to excuse its performance. See *National Surety Corp v Allen-Codell Co,* 70 F Supp 189 (ED Ky, 1947). One who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform.

Lardner cites as "glaring error" the trial court's finding that Lardner did not abandon the job because of Division's poor performance and that Division did not materially breach before it defaulted. However, our review of the record supports the trial court's finding that Division did not materially breach prior to its default. While Lardner may have considered the default on the project a total breach, Lardner did not demonstrate such a belief by its conduct. Lardner continued working on the project after Division withdrew, dealing with Sentry and Ingham County. If Lardner insisted on a forfeiture when Division withdrew, it should have done so at once. *Schnepf v Thomas L McNamara, Inc,* 354 Mich 393, 397; 93 NW2d 230 (1958).

Lardner further asserts that Sentry breached by failing to pay its invoices of $27,000, $5,000, and $1,350.

Evidence at trial showed that Ingham County paid Lardner $20,000 pursuant to the agreement that Lardner would complete the project posthaste. Lardner failed to do so and removed equipment from the work site, causing further delay. The trial court did not clearly err in its finding that Lardner was paid $20,000 as agreed and that Lardner had not shown it was entitled to more than this, despite other agreements about extra work which did not justify Lardner's breach.

Under the subcontract, Lardner was entitled to payment for the proportionate value of the work done, which was to be approved by the contractor's project manager. The subcontract stated:

Monthly and Final Payments. If requested by Contractor, Subcontractor shall submit a detailed schedule showing the subdivision of the Contract Sum into its various parts for the purposes of checking requisitions before commencing the Work. On or before the last day of each month, Subcontractor shall submit to Contractor in the form required a written requisition for payment or the proportionate value of the Work installed to that date, which requisition shall be approved for payment by Contractor's project Manager.

Lardner failed to show that it was entitled under the subcontract to any more money than it received. The trial court did not clearly err in finding this. James Gray, the architect, testified that he approved payment of fifty percent of the contract value to Lardner, as he assumed the work materials were on the job site. The cost of an elevator normally reflects fifty percent for labor and fifty percent for materials. Lardner's $27,000 invoice did not include a breakdown of the charges. Gray never approved the additional $7,-000 on that invoice. When he received an invoice for $5,000 on November 3, 1981, it did not include a breakdown either. Bruce Lardner testified that he offered to provide a breakdown of costs, but that Gray had stated it was not necessary. The trial judge found that Gray was an extremely credible witness as compared to Lardner. As we are in no position to assess the credibility of witnesses, we discern no clear error in this finding.

Under the subcontract, Lardner was entitled to payment for the proportionate value of the work

done. Lardner failed to demonstrate it was entitled to more payments than it received. In refusing to proceed, Lardner substantially breached. The trial court did not err in finding that Lardner breached by failing to perform, and that Sentry was not in breach by failing to pay Lardner's invoices.

Nor do we find error in the trial court's assessment of a portion of the penalty costs against Lardner, which represented the portion of the delay for which Lardner was responsible. The subcontract specifically incorporated the general contract entered between Division and Ingham County. Lardner was bound by those provisions, which it was or should have been aware of.

Lardner also contends the trial court erred in finding a novation. We disagree. The trial court never found a novation. It merely mentioned novation as one viable theory under which Lardner proceeded to complete the project. This aspect of the trial court's ruling appears to be based upon the subcontract between Division and Lardner and Lardner's failure to perform. We find no error in the trial court's mention of novation as a viable concept.

In conclusion, the trial court's finding that Lardner was in breach of contract by failing to perform was not clearly erroneous. Lardner was not justified in terminating its performance when Sentry did not pay its invoices in full.

III

Finally we address Sentry's contention on cross-appeal that the trial court erred in awarding it only partial attorney fees. The subcontract between Lardner and Division included the following provision:

> 14. *Attorney Fees.* In the event it becomes necessary for Contractor to enforce this Subcontract to secure the performance thereof or assert any claim against Subcontractor, Subcontractor agrees to pay a reasonable attorney fee and any costs incurred hereby.

The subcontract also included the general contract, along with its penalty provisions. The trial court ruled that Lardner was not responsible for all the delay that resulted in assessing penalties against Sentry. It ruled that attorney fees would have to be proportionately dealt with, and in May, 1984, entered a judgment requiring Lardner to pay only one-half the attorney fees billed to Sentry.

Contractual provisions for payment of reasonable attorney fees are generally valid. Such fees must be measured by the fair value of the services rendered. *Wilson Leasing Co v Seaway Pharmacal Corp,* 53 Mich App 359, 366; 220 NW2d 83 (1974); *Michigan National Leasing Corp v Cardillo,* 103 Mich App 427, 436; 302 NW2d 888 (1981), lv den 412 Mich 857 (1981); *United Growth Corp v Kelly Mortgage & Investment Co,* 86 Mich App 82, 89-90; 272 NW2d 340 (1978), lv den 406 Mich 855 (1979). The fact that Lardner was not responsible for all the delay is irrelevant with respect to the attorney fees incurred by Sentry in enforcing the subcontract. The trial court erred in not awarding one hundred percent of Sentry's attorney fees in accordance with the subcontract. Sentry, by reason of its performance bond, was subrogated to the rights and obligations under the subcontract executed between Division and Lardner. Therefore, we remand this case for determination of reasonable attorney fees (the fair value of services rendered) to be awarded to Sentry for all of its attorney fees incurred in asserting this claim against Lardner, as required by the Division-Lardner subcontract.

The judgment in favor of Sentry is affirmed. The case is remanded for assessment of Sentry's attorney fees consistent with this opinion.