# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHAEL S. SHERMAN, D.O., PC d/b/a
PHYSICIAN EYE CARE ASSOCIATES OF
GARDEN CITY and MICHAEL S. SHERMAN,
D.O.,

        Plaintiffs/Counter-
        Defendants/Appellees,

v

SHIRLEY T. SHERROD, M.D., PC, and
SHIRLEY T. SHERROD, M.D.,

        Defendants/Counter-
        Plaintiffs/Third-Party
        Plaintiffs/Appellants,

and

GARDEN CITY HOSPITAL,

        Third-Party Defendant/Appellee.

UNPUBLISHED
December 17, 2015

No.   320689
Wayne Circuit Court
LC No.   08-014212-CK

---

MICHAEL S. SHERMAN, D.O., PC d/b/a
PHYSICIAN EYE CARE ASSOCIATES OF
GARDEN CITY and MICHAEL S. SHERMAN,
D.O.,

        Plaintiffs/Counter-
        Defendants/Appellees,

v

SHIRLEY T. SHERROD, M.D., PC, and
SHIRLEY T. SHERROD, M.D,

        Defendants/Counter-
        Plaintiffs/Third-Party
        Plaintiffs/Appellants,

No.   323278; 324569
Wayne Circuit Court
LC No.   08-014212-CK

-1-

and

GARDEN CITY HOSPITAL and GARY LEY,

Third-Party Defendants.

Before:  SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

In docket no. 320689, defendants/third-party plaintiffs, Shirley T. Sherrod, M.D., P.C. and Shirley T. Sherrod, M.D., appeal as of right the trial court's ruling concerning the damages issue to be litigated at trial, its award of attorney fees and expenses to plaintiffs, and its award of additional case evaluation sanctions to third-party defendant, Garden City Hospital.  In docket no. 323278, defendants/third-party plaintiffs appeal as of right the trial court's July 31, 2014 order, and in docket no. 324569, defendants appeal as of right the trial court's October 22, 2014 order holding them in contempt for failing to comply with the court's July 31, 2014 order.  In docket no. 320689, we affirm the trial court's award of attorney fees and expenses under the indemnification provision of the parties' purchase agreement, but reverse in all other respects and remand for a new trial consistent with this opinion.  In docket no.'s 323278 and 324569, we affirm.

The basic facts of this case were set forth in a prior appeal governing this case:

Defendants Sherrod entered into a purchase agreement to sell their ophthalmology medical practice to plaintiffs for $245,000.  Before the sale, defendants Sherrod retained Richard Knuff to conduct a business valuation of the practice, and he concluded that it was worth $422,202.58, with the goodwill valued at $181,048.58.  Defendants Sherrod agreed to use all reasonable efforts to transfer their goodwill to plaintiffs, and support the transfer in every possible way so that plaintiff Michael Sherman would receive the benefit of defendants' goodwill.  Contemporaneous with the purchase agreement was an employment agreement executed between defendant Shirley Sherrod and Garden City.  Defendant Shirley Sherrod agreed to continue working for the practice, part-time, for one year, in exchange for $50,000 as compensation.

Despite these agreements, the relationship between Dr. Sherman and Dr. Sherrod soon deteriorated.  According to Sherman, defendant Sherrod refused to inform the staff that plaintiffs now owned the practice, refused to give him the keys to the offices, refused to give up control of the billing process, and insisted that her name and billing numbers be used.  Sherrod, on the other hand, claimed that Sherman was performing unwarranted medical procedures and cashing checks that rightfully belonged to her.  Sherrod sent a series of emails to Knuff, expressing her dissatisfaction with the employment situation and her desire to leave.  In an email dated September 27, 2008, Sherrod wrote that she had stopped working that week and would not return.

A meeting between the parties and Gary Ley, president and CEO of Garden City, occurred on October 1, 2008. Sherrod claims that she informed the parties that she reported Sherman's behavior to the Office of the Inspector General, and Ley reportedly stated that Sherrod would be hearing from his lawyers. After this meeting, a series of letters between Ley and Sherrod ensued, which culminated in Ley writing to Sherrod that he accepted her resignation effective September 30, 2008.

Plaintiffs subsequently filed a complaint against defendants Sherrod alleging numerous causes of action, including breach of contract. Defendants Sherrod filed a counterclaim against plaintiffs for breach of contract and an accounting, and filed a third-party complaint against Garden City for a violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.* Plaintiffs moved for summary disposition on their breach of contract claim pursuant to MCR 2.116(C)(10), and on defendants' counterclaims, which the trial court granted. The trial court also granted summary disposition to Garden City on the WPA claim pursuant to MCR 2.116(C)(10). Both Garden City and plaintiffs were granted case evaluation sanctions, despite defendants' objections and request for a new case evaluation because case evaluation proceeded with only two panel members. [*Michael S Sherman, DO, PC v Shirley T Sherrod, MD, PC*, unpublished opinion per curiam of the Court of Appeals, issued May 30, 2013 (Docket No.'s 299045, 299775, 308263), *app den* 495 Mich 900; 839 NW2d 219 (2013)].

On prior appeal to this Court, we held that the trial court properly granted summary disposition in favor of Garden City on defendants' WPA claim and in favor of plaintiffs on defendants' counterclaims. We further held that, "In regard to plaintiffs' breach of contract claim, the trial court properly found that there is no genuine issue of material fact in regard to defendant Sherrod quitting her employment and breaching the contract. However, there is a genuine issue of material fact regarding the amount of damages resulting from that breach. Also, while the decision to award case evaluation sanctions to plaintiffs and Garden City was proper, the trial court should consider on remand whether the amount should be modified for plaintiffs." *Id.*, slip opinion at page 6. We thus affirmed in part, reversed in part, and remanded the matter to the trial court for further proceedings consistent with the opinion.

On remand, the trial court scheduled the matter for a jury trial on the issue of damages. Prior to trial, however, myriad motions were filed. Relevant to the instant matter, plaintiffs filed a motion to bar defendants' efforts to re-litigate causation. Defendants responded that plaintiffs' motion was nothing more than plaintiffs' attempt to seek protection from the fact that they failed to mitigate their damages. According to defendants, the defense of failure to mitigate damages is not a new causation theory and is, instead, a defense that concerns damages such that defendant should be allowed to introduce evidence of this defense at trial. The trial court granted plaintiffs' motion "because, based upon the Court of Appeals Opinion dated May 30, 2013, pp. 6 and 8, the trial is on damages only."

A jury trial concerning damages only took place on January 27, 28, 29, 30 and February 3, 2014. The jury reached a verdict in the amount of $532,356.00 in favor of the Sherman plaintiffs and against defendants.

Thereafter, on February 28, 2014, the trial court held a hearing on several previously filed motions two of which are at issue in the present appeal: third-party defendant Garden City Hospital's motion for additional costs and fees under MCR 2.403 (case evaluation sanctions); and, plaintiffs' motion for partial summary disposition as to indemnification for attorney fees. The trial court denied third-party plaintiffs' request for an evidentiary hearing on the issue of case evaluation sanctions and awarded Garden City Hospital its additional requested sanctions. An amended judgment in favor of Garden City Hospital and against the Sherman defendants/third-party plaintiffs was entered on March 5, 2014, to reflect the additional award.

In plaintiffs' motion for indemnification as to attorney fees, they relied on the medical practice purchase agreement dated May 23, 2008, to argue that defendants were liable for indemnification of plaintiffs for the reasonable attorney's fees and court costs they had incurred in prosecuting the action. The trial court denied defendants' request for an evidentiary hearing on this issue and, on March 5, 2014, entered judgment in favor of plaintiffs and against defendants for the attorney fees, expert fees, costs and expenses incurred pursuant to the May 23, 2008 purchase agreement.

In July 2014, plaintiffs moved the trial court for an order enjoining defendants from transferring assets and to turn over records related to a specific trust. Plaintiffs asserted that since entry of the judgment in their favor and against defendants, defendants have done everything they could to avoid having to satisfy the judgment, including transferring funds from a specified pension plan and trust. In a July 31, 2014 order, the trial court ordered defendants to disclose to plaintiffs the financial institution in which the trust currently exists and the amount of money in the trust and to deposit the trust funds into a financial institution if they were not currently in one. The trial court further ordered that neither defendants nor anyone acting on their behalf shall sell, transfer, assign, destroy, conceal, or otherwise dispose of any trust assets and shall turn over any trust documents to plaintiffs.

In September 2014, plaintiffs filed a motion to show cause why defendants should not be held in contempt of court for failure to comply with the trial court's July 31, 2014 order. According to plaintiffs, defendants refused to comply with the order concerning the location of the trust and amount of trust assets. In an October 22, 2014 order, the trial court found defendants to be in contempt of the trial court's July 31, 2014 order.

These consolidated appeals followed.

Docket No. 320689

A. New Trial/Case Evaluation Sanctions (Sherman)

On appeal, defendants first contend that they are entitled to a new trial due to the trial court's erroneous ruling that this Court's May 30, 2013 opinion limited the trial to the amount of

-4-

damages only and precluded defendants from litigating the question of the causal relationship between Dr. Sherrod's breach of contract and the Sherman defendants' damages. We agree.

Interpreting the meaning of a court order involves questions of law that are reviewed de novo. *Augustine v Allstate Ins Co*, 292 Mich App 408, 423-424; 807 NW2d 77 (2011). This Court also reviews de novo whether the trial court followed this Court's ruling on remand as a question of law. *Id*. In addition, "this Court reviews de novo the determination whether the law-of-the-case doctrine applies and to what extent it applies." *Id*.

The law-of-the-case doctrine provides that this Court's determination of an issue in a case binds both the trial court on remand and this Court in subsequent appeals. *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). On remand, the trial court may not take action that is inconsistent with the judgment of this Court. *Id*. "[T]he trial court is bound to strictly comply with the law of the case, as established by [this Court], according to its true intent and meaning." *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008)(quotation marks and citation omitted).

In the May 30, 2013 opinion, this Court affirmed the trial court's order granting summary disposition in favor of plaintiffs on their breach of contract claim against defendants and on defendants' counter-claims against them pursuant to MCR 2.116(C)(10). This Court stated, ". . . there is no genuine issue of material fact regarding Sherrod's decision to quit her employment. In doing so, she failed to adhere to her obligations under the purchase agreement to transition the practice and transfer her goodwill." *Sherman, supra*, at slip opinion page 3. This Court further stated, "We agree with plaintiffs that there is no genuine issue of material fact regarding whether defendants first breached the contract, thereby causing plaintiffs damage. Nevertheless, we do find that there is a genuine issue of material fact regarding the amount of damages." *Id*. at page 4.

> Here, plaintiffs sought to recover for defendants' breach of contract when Sherrod quit her employment. Plaintiffs requested and received $181,048.58, representing the amount of goodwill in the business, as calculated in the business valuation report that defendants Sherrod had prepared in expectation of selling the practice. Yet, damages are generally "an issue of fact, and questions of fact are, of course, generally decided by the trier of fact [.]" *McManamon v Redford Tp*, 273 Mich App 131, 141; 730 NW2d 757 (2006). While plaintiffs claim that the business valuation report represented the amount of goodwill in the business, this report was current as of December 31, 2006, and the purchase agreement was not executed until May 23, 2008. Moreover, even if the loss of goodwill is the appropriate measure of damages, plaintiffs failed to produce any evidence, such as expert testimony, demonstrating that defendants' breach resulted in a loss of any or all of the goodwill in the practice. [*Id*. at page 4].

This Court concluded, "In regard to plaintiffs' breach of contract claim, the trial court properly found that there is no genuine issue of material fact in regard to defendant Sherrod quitting her employment and breaching the contract. However, there is a genuine issue of material fact regarding the amount of damages resulting from that breach." *Id*. at page 6. The plain language of this Court's opinion makes clear that plaintiffs had established only that they had suffered

*some* damages as a result of defendants' breach of the parties' contract. However, the type and amount of damages that plaintiffs had suffered as a result of defendants' breach remained at issue.

Prior to the start of the jury trial held on remand, defendants argued that they should be permitted to present evidence at trial concerning causation of the damages and additional evidence that there were mitigating factors that should limit the amount of damages recoverable by plaintiffs. Defendants are correct. While damages are an element of a breach of contract action (*New Freedom Mortg Corp v Globe Mortg Corp*, 281 Mich App 63, 69; 761 NW2d 832 (2008)), a party to a contract who is injured by another's breach of the contract is entitled to recover from the latter only damages for such injuries as are the direct, natural, and proximate result of the breach. *Farm Credit Services of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 679; 591 NW2d 438 (1998). The type and amount of damages that were the direct, natural, and proximate result of defendants' breach of contract (i.e., those damages that were *caused* by the breach) could only be established through testimony and evidence. To determine the amount of damages plaintiffs were entitled to recover necessarily required proof of a nexus between defendants' breach of contract and the specific damages sought. The only testimony permitted by the trial court, however, was that of certified public accounts (CPA's) concerning numerical amounts. While the experts gave some testimony as to how the monetary damages related to the defendants' breach, there is no indication that they were in a position to make such determinations.

Plaintiffs' expert, Rodney Crawford, for example, testified that there are a number of different types of damages a business can sustain in a breach of contract action including loss of profits, expectation damages, and loss of investment value in a business. Crawford testified that in the present case, the damage period continued beyond the eight months in which Dr. Sherrod failed to fulfill her employment contract with plaintiffs. Crawford testified that the 12-month period of Dr. Sherrod's employment was to be a transition period for the business and if the transition never effectively occurs, and patients and business are lost as a result of that, the damages do not suddenly stop at the end of the transition period; damages continued for the entire period of the time that plaintiffs owned the practice. Crawford testified that after reviewing the relevant historical financial documentation, he was able to present two different damage scenarios, differing only in the reasonable expectation of what plaintiffs' revenue stream would have been. Because of the limitations of the trial parameters, defense counsel was relegated to questioning this witness as to Dr. Sherman's familiarity with the volume of business in each of the two offices prior to his purchase of the business and how business was obtained.

Defendants called Jay Sergeant as their expert witness. Sergeant's testimony was essentially that Crawford's methods in calculating damages were highly flawed and highly speculative. He testified that the calculations were not reasonable based on the facts. According to Sergeant, based on the documents he reviewed and his own analysis, plaintiffs suffered no damages as a result of defendants' breach of contract. Again, however, there is no indication that Sergeant had or would have any first-hand knowledge about whether any of defendants' goodwill was transferred before her breach, how business was obtained prior to or after the sale of the business, or any other factor that may influence the actual amount of damages suffered by plaintiffs as a result of defendants' breach.

In sum, this Court, in its May 30, 2013 decision, determined that there was no uncertainty as to the fact of damages concerning defendants' breach of contract. However, the amount of damages attributable to the breach required testimony and evidence to establish that plaintiffs recovered only those damages as could be said to have directly, naturally, and proximately flowed from defendants' breach. *Farm Credit Services of Michigan's Heartland, PCA*, 232 Mich App at 679. The trial court erred in ruling otherwise and in limiting the trial to a presentation of numbers only, without allowing testimony and evidence to support or discredit that the numbers were caused by defendants' breach. A new trial is thus ordered.

Defendants also state that the trial court should have allowed testimony regarding plaintiffs' mitigation of damages. Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing. *Morris v Clawson Tank Co*, 459 Mich 256, 263; 587 NW2d 253 (1998). In a contract action, a party injured by wrongdoing must make every reasonable effort to minimize damages and the injured party cannot recover for any item of damage which could have been avoided through reasonable means. *Id*. at 263-264.

Defendants offer no argument on the issue of mitigation of damages. It is not sufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Nevertheless, because we are remanding for a new trial, we again clarify that our May 30, 2013 opinion simply indicated that there was no question as to the fact of damages. Only those damages that are have directly, naturally, and proximately flowed from defendants' breach are recoverable. *Farm Credit Services of Michigan's Heartland, PCA*, 232 Mich App at 679.

Because defendants are entitled to a new trial, their summary statement regarding error with respect to case evaluation sanction award in favor of plaintiffs is moot.

### B. Award of Attorney Fees

Defendants next argue that the trial court erred in awarding plaintiffs all of the attorney fees and expenses they had incurred in pursuing the litigation because the indemnification provision in the parties' contract relied upon by the trial court does not apply under the circumstances, because contractual attorney fees are considered damages which are to be determined by the jury, because the trial court failed to conduct an evidentiary hearing concerning the requested fees, and because the amount of fees requested was unreasonable. We disagree.

This Court applies the same contract construction principles to indemnity contracts that govern any other type of contract. *Zahn v Kroger Co of Mich*, 483 Mich 34, 40; 764 NW2d 207 (2009). Where parties have expressly contracted with respect to the duty to indemnify, the extent of the duty must be determined from the language of the contract. *Grand Trunk W RR, Inc v Auto Warehousing Co*, 262 Mich App 345, 353; 686 NW2d 756 (2004). An indemnification provision is to be construed to effectuate the intentions of the parties to the contract, which is determined through review of the contract language, the situation of the parties, and the circumstances involved in the initiation of the contract. *Triple E Produce Corp v*

*Mastronardi Produce, Ltd.*, 209 Mich App 165, 172; 530 NW2d 772 (1995). When the language of the contract is clear and unambiguous, interpretation is limited to the actual words used, and an unambiguous contract must be enforced according to its terms. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004).

The parties' medical practice purchase agreement contained the following indemnification provision:

> 15. <u>Indemnification by Seller.</u> Seller shall indemnify and hold Purchaser harmless against any and all loss, injury, liability, claim, damage or expense, including reasonable attorneys' fees, interest, court costs and amounts paid in settlement of claims, suffered by Purchaser which results from any breach by Seller of any representations or warranties made by Seller in this Agreement and the failure by Seller to perform any of its obligations under this Agreement and any claims made against Purchaser arising out of (i) Seller's ownership use, operation or sale of the Tangible or Intangible Practice Assets, the Practice, or the office facility at which the Practice is currently conducted, including but not limited to claims related to or arising out of the hiring, firing, disciplining or supervising, prior to Closing, of any of Seller's employees; (ii) all liabilities arising out of claims alleging damage to the environment or similar claims with respect to the conduct of the Practice or the use, occupation, ownership, or operation by Seller and any of Seller's predecessors of real property prior to the Closing, (iii) the Practice's billing practices prior to Closing; or (iv) any of the obligations, liabilities or commitments of Seller or Physician not expressly assumed by Purchaser under this Agreement.

Defendants first argue that this indemnification provision does not apply in the present circumstances because provisions such as the above are applicable to claims brought against the indemnitee by third parties, not to direct claims between the parties themselves. However, "an indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 173; 848 NW2d 95 (2014). "Michigan law provides contracting parties with broad discretion in negotiating the scope of indemnity clauses." *Id*.

The plain language of the indemnity clause at issue is all-inclusive. It requires indemnification by plaintiffs against "any and all loss . . . damage or expense, including reasonable attorneys' fees . . . suffered by Purchaser which results from . . . the failure by Seller to perform any of its obligations under this Agreement and any claims made against Purchaser . . . ." The clause uses the terms "all" and "any," which provide for the broadest possible obligation to indemnify. Moreover, the clause requires indemnification for those expenses suffered by plaintiffs resulting from both defendants failure to perform their obligations under the purchase agreement *and* any claims made against plaintiffs, indicating that the two were intentionally set apart as differing sources for potential losses, damages, or expenses. Defendants also briefly contend that the only breach that is the subject of this case is Dr. Sherrod quitting her employment with Garden City and that, as such, she did not breach the purchase agreement and the indemnification language set forth in § 15 of the purchase agreement did not apply. However, the agreement stated that seller (defendants) would "use all reasonable efforts to

-8-

transfer it's and her goodwill from patients, practice relationships and referral sources to [plaintiffs] and shall support such transfer in every possible way" (§ 6). The trial court granted Garden City Hospital's motion for summary disposition, finding that Dr. Sherrod quit her employment with Garden City before the 12-month period specified in the employment agreement. Thereafter, plaintiffs moved for summary disposition contending that because Dr. Sherrod prematurely quit her employment with Garden City, she did not assist in maintaining the patient base, transfer the practice as an ongoing business concern, or provide her goodwill as required under the parties' contract. The trial court granted summary disposition in plaintiffs' favor, and we affirmed. Based upon the history and law of this case, then, more than Dr. Sherrod's breach of her employment contract with Garden City was at issue. Thus, the trial court properly determined that the plain language of the indemnification clause applied in the instant matter.

Defendants next assert that because contractual attorney fees are an issue of damages, the determination of the amount of attorney fees recoverable was an issue of fact for the jury to determine. We disagree.

Generally, attorney fees are not recoverable unless a statute, court rule, or common-law exception provides to the contrary. *Schoensee v Bennett*, 228 Mich App 305, 312; 577 NW2d 915 (1998). One exception is where parties contract for the payment of reasonable attorney fees. *Sentry Ins v Lardner Elevator Co*, 153 Mich App 317, 326; 395 NW2d 31 (1986). Thus, parties to a contract may include a provision that under certain circumstances one party will be required to pay the other side's reasonable attorney fees. *Zeeland Farm v JBL Enterprises*, 219 Mich App 190, 195-196; 555 NW2d 733 (1996).

Defendants have provided no authority suggesting that payment of attorney fees as part of an indemnity provision qualifies as damages. As previously indicated, "an indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation." *Miller-Davis Co*, 495 Mich at 173. Thus, the indemnity provision is independent of plaintiffs' breach of contract action against defendants and their request for attorney fees is part and parcel of the indemnity provision rather than a request for damages to compensate them for defendants' breach of the parties' contract. In many cases where parties have an indemnification agreement that provides for payment of reasonable attorney fees, after a jury has found in favor of one party against another on the contractual indemnity claim, the issue of reasonable attorney fees has been submitted to and resolved by the judge. See, e.g., *Hayes v Gen Motors Corp*, 106 Mich App 188, 202; 308 NW2d 452, 459 (1981); *Warren v McLouth Steel Corp*, 111 Mich App 496; 314 NW2d 666 (1981). The trial court did not err in resolving the issue in this case.

Nor did the court abuse its discretion in denying defendants' requested evidentiary hearing. The indemnification provision at issue specifically allows for payment of "reasonable attorneys' fees" suffered by plaintiffs. This is consistent with historical case law. See, *Redfern v RE Dailey & Co*, 146 Mich App 8, 22; 379 NW2d 451 (1985)("Although we have construed the parties' indemnity agreement to include attorney fees, we will stop short of a construction condoning unreasonable attorney fees.").

Generally, a trial court should hold an evidentiary hearing when a party is challenging the reasonableness of the attorney fees claimed. However, if the parties created a sufficient record to review the issue, an evidentiary hearing is not required. A trial court's decision that an evidentiary hearing is not warranted is reviewed for an abuse of discretion. [*Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002)(internal citations omitted)].

Here, plaintiffs moved for partial summary disposition as to indemnification for fees and expenses based upon the indemnification provision in the parties' purchase agreement. Plaintiffs attached an itemization of the attorney fees and expenses they sought, totaling $420,939.56, in support of their motion. At the February 18, 2014 hearing on plaintiffs' motion, defendants indicated the need for an evidentiary hearing given that the time entries provided by plaintiffs to defendants were all redacted, that the amount of time spent seemed unusually high, that the fees claimed appeared excessive based on prior counsel's time spent and fees claimed, and because one of the expert fees was for an expert that was not even going to testify at trial. The trial court opined that plaintiffs were entitled to indemnification, but stated that it would have a separate hearing on the attorney hours and attorney fees, prior to which plaintiffs were to provide defendants with unredacted billings.

Thereafter, at a February 28, 2014 hearing, defendants stated that while Dr. Sherman's attorney brother handled the matter for an admittedly reduced rate for the vast majority of the time (charging only $30,000 total), counsel seeking the instant attorney fees had nine attorneys working on the same case for just over a six month period and were seeking far in excess of what plaintiffs had paid in attorney fees for the majority of time spent on the case. Defendants further indicated that the amount sought was excessive for a two day trial on damages where only two witnesses were called, albeit experts. The judge ultimately awarded plaintiffs $250,000 in attorney fees for their second counsel(s), $30,000 in attorney fees for Dr. Sherman's brother, plus costs for a total of $392,693.92 on their indemnification request and denied defendants' request for an evidentiary hearing on the issue.

At the time it rendered its decision, the trial court had all of the information necessary to determine whether the fees requested were reasonable. Pursuant to MRPC 1.5(a), "[a] fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." MRPC 1.5(a) also provides a nonexhaustive list of factors to consider when determining if a fee is unreasonable and, therefore, clearly excessive. These factors include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent. MRPC 1.5(a). [*Speicher v Columbia Tp Bd of Election Com'rs*, 299 Mich App 86, 94–95; 832 NW2d 392 (2012) (quotation marks omitted).]

Defendants' request for an evidentiary hearing was based primarily on their claim that the fees requested were unreasonable. This claim was premised, in turn, on their claim that the time involved was not commensurate with the amount charged when compared with the amount of attorney fees defense counsel charged and the amount of fees plaintiffs' first counsel, (Dr. Sherman's brother) charged. The briefs submitted by plaintiffs outlined all of the factors set forth above, in detail, and contained a detailed billing. A comparison to prior counsel's or opposing counsel's bill is not one of the factors. And, defendants do not take issue with any particular line billing, hourly rate, the experience of counsel, or any other relevant factor. Defendants identify nothing that was not borne out in the record that required an evidentiary hearing. Moreover, the trial court did consider plaintiffs' arguments concerning the reasonableness of the fees requested, as indicated by its award of less than the fees requested. Thus, the trial court did not abuse its discretion in denying plaintiffs' request for an evidentiary hearing, nor did it err in awarding the amount of fees that it did.

C. Case Evaluation Sanctions

Defendants contend that the trial court erred in granting an additional $25,000 in case evaluation sanctions to Garden City Hospital. We agree.

A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). However, we review the amount of case evaluation sanctions awarded for an abuse of discretion. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009).

MCR 2.403(O) governs case evaluation sanctions and provides, in relevant part, as follows:

**Rejecting Party's Liability for Costs**.

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

-11-

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

\*\*\*

(6) For purposes of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.

For the purpose of determining taxable costs under this subrule and under MCR 2.625, the party entitled to recover actual costs under this rule shall be considered the prevailing party.

\*\*\*

(8) A request for costs under this subrule must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion

(i) for a new trial,

(ii) to set aside the judgment, or

(iii) for rehearing or reconsideration.

It is undisputed that Garden City Hospital was granted summary disposition in its favor on defendants/third-party plaintiffs' third-party claims against it. Thereafter, Garden City Hospital moved for an award of case evaluation sanctions in its favor and the trial court granted the motion, awarding Garden City Hospital $4,865.20 in a June 2010 order. Defendant/third-party plaintiffs appealed the summary disposition decision as well as the case evaluation sanction award to this Court, both of which this Court rejected in its May 30, 2013 opinion. In a January 2014 motion, Garden City Hospital requested additional case evaluation sanctions, arguing that it had incurred additional costs and fees associated with defendants/third-party plaintiffs' rejection of the case evaluation award. According to Garden City Hospital, it had to undertake significant efforts to collect on its judgment against defendants/third-party plaintiffs and that it was seeking additional attorney fees and costs under MCR 2.403 that were incurred in connection with post-trial/post-judgment proceedings (excluding appellate attorney fees and costs). The trial court granted the motion and awarded Garden City Hospital its requested additional $25,000.00 in case evaluation sanctions.

-12-

MCR 2.403(O)(8) specifically requires that a request for case evaluation sanctions must be filed and served within 28 days after of the judgment. Garden City Hospital did not move for additional fees until more than seven months after this Court's May 2013 opinion affirming the initial judgment and award of case evaluation sanctions in favor of Garden City Hospital. The motion was thus untimely and should have been denied.

Moreover, MCR 2.403(O) is a trial-oriented court rule. *Haliw v City of Sterling Hts*, 471 Mich 700, 711; 691 NW2d 753 (2005). The purpose of case evaluation sanctions is to shift the financial burden of trial onto the party who demands a trial by rejecting a proposed case evaluation award. *Allard v State Farm Ins Co*, 271 Mich App 394, 398; 722 NW2d 268 (2006). Garden City Hospital incurred no additional trial-related or trial oriented fees after its original award of case evaluation sanctions. The award of additional case evaluation sanctions was an error of law and must be reversed.

<u>Docket No.'s 323278 and 324569</u>

<u>A. July 31, 2014 Order</u>

Defendants argue that this Court should reverse the trial court's July 31, 2014 order addressing the Shirley T. Sherrod, M.D. P.C. Target Benefit Pension Plan and Trust ("the Trust"). We disagree.

After plaintiffs obtained a judgment against defendants, they began collection proceedings to satisfy the judgment. Plaintiffs learned that defendants had an interest in the Trust and sought to discover the exact nature of her interest in the same, as well as the amount, with allegedly little cooperation from defendants. Plaintiffs thus sought an order from the trial court enjoining defendants from transferring or disposing of assets from the Trust and compelling them to turn over records related to the Trust. Despite defendants' response that the Trust was a pension plan subject to ERISA and thus not simply defendants' monies, nor subject to garnishment, the trial court entered an order on July 31, 2014, requiring defendants to disclose the financial institution where the Trust was held and the amount of money in the Trust. The trial court further ordered that if the funds were not in a Michigan financial institution, that they should be deposited in a Michigan institution within seven days with all records regarding the Trust being turned over to plaintiffs and prohibiting defendants and anyone acting on their behalf from selling, transferring, concealing, or otherwise disposing of any Trust assets until further order of the court.

We review a trial court's discovery orders for abuse of discretion. *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998).

Pursuant to MCL 600.6104:

After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:

(1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;

-13-

(2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;

(3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;

(4) Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and

(5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

The court may permit the proceedings under this chapter to be taken although execution may not issue and other proceedings may not be taken for the enforcement of the judgment. It is not necessary that execution be returned unsatisfied before proceedings under this chapter are commenced.

When, in early 2014 (after judgment had been entered in their favor), plaintiffs moved to enjoin defendants from moving any trust assets and for records related to the trust, they attached documents to their motion showing that in November 2010, Dr. Sherrod had a retirement cash management account in the name of Shirley T. Sherrod MD, PC with a value of approximately $1.7 million dollars. On May 24, 2011, Dr. Sherrod filed documents with the bankruptcy court claiming an interest in a pension with a balance of $150,000 and an IRA with a balance of $75,000. On March 27, 2014, Dr. Sherrod filed documents with the bankruptcy court claiming an interest in a pension account (appearing to be the Trust) with a balance of $500,000 and an IRA with a balance of $75,000.

In response to plaintiffs' motion, defendants made assertions regarding the Trust account, but attached no documents to support their position. Defendants did not even provide an affidavit. It is, at this point, not clear whether the Trust is, as simply asserted by defendants, exempt from execution, and the order does little more than require defendants to provide information to allow such a determination and to prevent any transfer of Trust assets until the determination may be made.

Defendants assert that under both Michigan and federal law, a judgment creditor is precluded from executing on a qualified pension plan. While that may be true, MCL 600.6104 explicitly provides that "[t]he court may permit the proceedings under this chapter to be taken although execution may not issue and other proceedings may not be taken for the enforcement of the judgment." Given the lack of any meaningful argument or support from defendants, the fact that plaintiffs had an outstanding judgment against defendants at the time the July 31, 2014 order was issued, the fact that the order did not call for satisfaction of the judgment out of the Trust, and the explicit language of MCL 600.6104, the trial court did not abuse its discretion in issuing the order.

B. October 22, 2014 Order

Defendants next contend that the trial court's October 22, 2014 order finding Dr. Sherrod in contempt of court for violating the July 31, 2014 order should be vacated because (1) entry of the July 31, 2014 order was erroneous; (2) any violation of the order by Dr. Sherrod was not wilful. We disagree.

Individuals who violate court orders are subject to contempt proceedings. *In re Contempt of Dorsey*, 306 Mich App 571, 583; 858 NW2d 84 (2014). Michigan courts of record have the inherent common-law right to punish all contempts of court. *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). Three sanctions are available to a court to remedy contemptuous behavior, the first of which concerns criminal contempt and the latter two which concern civil contempt: (1) criminal punishment to vindicate the court's authority, (2) coercion, to force compliance with a court order, and (3) compensatory relief for the complainant. *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 499; 608 NW2d 105 (2000). For criminal contempt, two elements must be proven beyond a reasonable doubt: "(1) that the individual engage in a wilful disregard or disobedience of the order of the court, and (2) that the contempt must be clearly and unequivocally shown." *In re Contempt of Dorsey*, 306 Mich App at 591. "Civil contempt proceedings seek compliance through the imposition of sanctions of indefinite duration, terminable upon the contemnor's compliance or inability to comply." *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012). We review the court's issuance of an order of contempt for abuse of discretion. *Deal v Deal,* 197 Mich App 739, 743; 496 NW2d 403 (1993).

It is not clear whether the trial court's contempt order was criminal or civil as it simply states that "Shirley T. Sherrod and Shirley T. Sherrod, P.C. are held in contempt of court for failing to comply with this court's order of July 31, 2014." At the hearing on plaintiffs' show cause motion, the trial court stated that it was granting plaintiffs' motion due to Dr. Sherrod's failure to disclose the location of the Trust funds. Defendants' argument that Dr. Sherrod's failure to comply with the trial court's order was not wilful suggests their belief that Dr. Sherrod was held in criminal contempt. However, the fact that there appears to be no criminal punishment ordered would suggest that the contempt order would most likely be civil in nature.

To support her claim that any noncompliance was unintentional, defendants direct this Court to a letter sent to Mr. Conger, who purportedly had some authority over the Trust, to assist in complying with the trial court's July 31, 2014 order. Mr. Conger responded that the sought information was protected from disclosure under ERISA and that he would not, as a result, be able to assist. At a hearing held on plaintiffs' show cause motion, defendants relied on Mr. Conger's response and asserted that defendants did not know where the Trust monies were located. Defendants' assertions regarding her lack of knowledge concerning the Trust were not supported by so much as an affidavit. If Dr. Sherrod created this Trust, it is nonsensical for her to claim that she does not know where the monies are or how much is in it and that she is without any means to obtain such information on accounts held in her or her business's name. In fact, she did not assert that she is without the means to obtain such information. She simply asserted that Mr. Conger would not assist in providing such information. Based upon the record before the trial court, it did not abuse its discretion in finding Dr. Sherrod in contempt of court for failing to disclose the location of the Trust funds.

In docket no. 320689, we affirm the trial court's award of attorney fees and expenses under the indemnification provision of the parties' purchase agreement, but reverse in all other respects and remand for a new trial consistent with this opinion. In docket no. 323278 and 324569, we affirm. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra